603 P.2d 932

**BRUCE CHURCH, INC., a corporation, Appellant,**

v.

**Michael PONTECORVO, Individually, and as Guardian for Joseph Pontecorvo, and Joseph Pontecorvo, Appellees.**

**No. 1 CA–CIV 4033.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 23, 1979.

Rehearing Denied Oct. 11, 1979.

Review Denied Oct. 30, 1979.

Anderson & Anderson by Jack M. Anderson and John S. Schaper, Phoenix, for appellant.

Fennemore, Craig, von Ammon & Udall by Silas H. Shultz, Michael Preston Green, Patrick Wm. Paterson, Phoenix, for appellees.

## OPINION

JACOBSON, Judge.

This appeal raises issues dealing with the trial court's awarding an additur and conditional new trial on damages, whether the defendant was entitled to an assumption of risk instruction and admissibility of plaintiff's "bad acts" occurring prior to his eighteenth birthday.

On March 6, 1973, plaintiff/appellee, Joseph Pontecorvo, was injured in an accident on Laguna Dam Road in Yuma County, Arizona, involving two prices of equipment operated by employees of the defendant/appellant, Bruce Church, Inc. Suit was brought on behalf of Joseph by his guardian, sounding in negligence against Bruce Church, which denied the negligence and asserted the defenses of assumption of risk and contributory negligence. Prior to trial, the defendant sought to depose the Yuma Chief of Police and sought to examine police records concerning the plaintiff's activities as a juvenile. The trial court denied this discovery. Upon the retirement of the judge who had made discovery orders, the judge who presided at the trial of this matter granted plaintiff's motion in limine regarding the plaintiff's use and possession of marijuana and narcotic drugs and his violation of certain rules and regulations. Also excluded by the motion was evidence that the defendant had fathered a child out of wedlock, had cohabited with another woman or, "has ever in his lifetime consumed beer or any alcoholic beverage."

The matter was tried to a jury which returned a verdict in favor of the plaintiff in the sum of $181,000.00 as compensatory damages, plus $10,000.00 in punitive damages.

Following the verdict, the plaintiff filed a motion for additur and the defendant filed a motion for a new trial. By minute entry order the trial court increased the plaintiff's verdict by $106,206.25. This sum purportedly represented $6,206.25 in medical damages, and $100,000.00 in "general damages". The trial court also denied defendant's motion for a new trial.

On June 3, 1977, the trial court entered a written judgment in favor of the plaintiff and against the defendant for $291,432.40. The defendant then moved to vacate the judgment on the grounds that it was void as the attempted additur by the trial court did not comply with Rule 59(i), Rules of Civil Procedure. The trial court then ordered that the defendant would have the option of accepting the additur of $106,-206.25 or the plaintiff would be granted a new trial to determine how much more than the original verdict ($191,000.00) the plaintiff was entitled to receive. The defendant rejected the "Order for Additur" and timely appealed.

The facts presented at trial showed that on March 6, 1973, Jose Casteneda, an employee of defendant was operating a tractor which pulled a rig used to burn weeds on a ditch bank parallel to Laguna Dam Road in Yuma County. As a result of the burning operation and because of the prevailing wind, Laguna Dam Road became obscured with smoke. The burning activity is accomplished by the operator pulling the rig down the road and an extension boom which contains the burning apparatus is then extended to the ditch bank to accomplish the burning operation. During the burning operation the burning liquid was depleted and the operator stopped the tractor/rig at that point. Plaintiff's expert placed the tractor and rig in the center of the northbound lane of the highway.

A Volkswagen bus being driven by the plaintiff in which another occupant was a passenger approached the stopped tractor and rig from the rear. Apparently the plaintiff spotted the tractor and passed on the right hand side. As he did so, the boom struck the windshield and top of the Volks-wagen. The plaintiff's vehicle proceeded around the rig, backed up and plaintiff and his companion got out and approached the tractor where the driver was seated. Plaintiff then began swearing at the tractor driver and the driver asked them to leave and go to the office to settle any problems they might have. Although neither occupant had any specific recollection, plaintiff's expert placed the defendant near the middle of the road and his companion at the edge of the road.

While the parties were in this position, the tractor and rig were struck from behind by a lettuce truck being driven by another employee of the defendant. This driver testified that the highway was so obscured by smoke that he did not see the rig until after he hit it.

The force of the impact drove the tractor forward striking the plaintiff in the head and throwing him into the bar ditch. The companion was also injured. Plaintiff received massive head injuries. He was hospitalized at Barrow Neurological Institute in Phoenix for five weeks and remained unconscious for nine days.

Plaintiff's medical testimony showed that as a result of plaintiff's brain injury, he suffered loss of intellectual ability, loss of memory and diminution of reasoning and judgment powers. Plaintiff's other evidence also established that prior to the accident, plaintiff, who was nineteen at the time, was enrolled as a student at Arizona Western Community College, had a full time athletic scholarship, was a member of the varsity football team and was majoring in law enforcement. In addition, the plaintiff presented a witness who testified that plaintiff was:

> "just an all-round, American, red-blooded boy. Good athlete, fairly good student; I thought very clean about his personal self, and as far as I knew, legally and morally."

Following this witness the defense sought to impeach this type of testimony by the use of the plaintiff's deposition that he had been arrested for shoplifting, twice for vandalism, forgery, use of dangerous drugs and

theft prior to the accident. This impeachment testimony was excluded together with the matters which were the subject matter of the motion in limine on the grounds that "any acts of misconduct prior to Joseph Pontecorvo reaching the age of 18 will be kept out of evidence."

We turn first to the propriety of the trial court's order granting the additur. As previously indicated, this order left intact the original jury verdict of $191,000.00 ($181,000.00 compensatory damages plus $10,000.00 punitive damages) and ordered only a new trial as to damages suffered by the plaintiff for medical expenses and for pain and suffering.

The plaintiff urges that the trial court's conditional order for additur on specific items of damage is justified under Rule 59(i), Rules of Civil Procedure, and the evidentiary and procedural posture of this case. That portion of Rule 59(i), upon which plaintiff relies, provides as follows:

"If the conditional order of the court requires a reduction of or increase in *damages*, then the new trial will be granted in respect of *the damages only* and the verdict shall stand in all other respects." (Emphasis added.)

It is plaintiff's contention that the word "damages" as used in this portion of Rule 59(i), refers only to the amount of "damages" that the trial court increases or decreases the jury's verdict, and thus a proper interpretation of this rule is a new trial on "damages" goes only to the propriety of such an increase or decrease, and in all other respects the jury's verdict on damages "shall stand".

In our opinion, this rule cannot be so interpreted. However, we do not need to determine whether in a particular case, Rule 59(i) might properly allow a new trial as to certain elements of compensatory damages, while allowing other elements of damages found by the jury, to stand. Rather, we are content, in this case, to determine the issue based on the general rule as to partial new trials which we deem applicable to Rule 59(i), Rules of Civil Procedure. This rule contemplates the grant-ing of a new trial in the event the aggrieved party has not accepted an increase or decrease in the amount of the verdict.

That rule is set forth in 6A Moore's Federal Practice ¶ 59.06, at 59–80:

"On a motion for new trial, therefore, the trial court has discretion, in both jury and non jury cases, to order that the new trial be had on all or part of the issues and as to all or any of the parties . . . [T]his may only be done, however, if the issues as to which the new trial is ordered are so distinct and independent from the rest of the case that they may be separately tried without injustice. If the determination as to a certain issue or as to less than all of the parties is not fairly severable from the rest of the case, but is interwoven with the remaining issues, the court may not order a partial retrial."

Id. at 59.

■ The rationale of "distinct and independent" vs. "interwoven" is particularly applicable to the issue of damages in a personal injury action. In such an action, the plaintiff is seeking a lump sum figure to compensate him for the injuries suffered. In ascertaining this total figure, the jury is allowed to consider certain elements such as loss of earnings, loss of future earnings based upon loss of earning capacity, pain and suffering, medical expenses related to the injury, and future medical expenses. In particular, the elements of future loss of earnings, loss of earning capacity, pain and suffering, and future medical expenses are not capable of precise ascertainment and thus "[i]n an action for personal injuries, the law does not fix precise rules for the measure of damages but leaves their ascertainment to a jury's good sense and unbiased judgment." *Meyer v. Ricklick*, 99 Ariz. 355, 358, 409 P.2d 280, 282 (1965). To this end, "the amount of damages for personal injuries is a question particularly within the province of the jury." *Wise v. Monteros*, 93 Ariz. 124, 125, 379 P.2d 116 (1963); *Phillips v. Stillwell*, 55 Ariz. 147, 99 P.2d 104 (1940).

■ Here, the trial court attempted to separate damages for future loss of earnings, from damages for pain and suffering and further concluded that damages for medical expenses were not included within the damages granted by the jury. This the trial court cannot do, for by the very nature of these highly uncertain and unascertainable elements of damages, they become so interwoven each with the other, that in absence of a device by which each jury's subjective "summing up" could be ascertained, they meld into a total acceptable sum which this particular jury is willing to return in this particular case.

The plaintiff, while conceding that generally damages in personal injury actions are interwoven, contends because of the particular facts in this case that the jury's exact intent can be ascertained and thus the jury simply "overlooked" medical expenses and pain and suffering damages. In support of this contention, the plaintiff points to the fact that the figure of $181,000.00 returned by the jury for compensatory damages is exactly the lowest figure that the employment expert gave as the plaintiff's estimated loss of future earnings. This, coupled with the bailiff's attempt on behalf of the jury to ascertain this expert's testimony, the plaintiff urges, allows the court to ascertain the jury's "separate" verdict on this element of damages. In the final analysis, this is pure speculation.

We hold that in a personal injury action where compensatory damages consist of such intangible values as loss of future earnings and pain and suffering, the jury's verdict on those issues are so interwoven that a partial new trial on damages cannot be granted on specific elements constituting these damages.

For this reason we find the case of *Davis v. Yellow Cab Co.*, 133 Ill.App.2d 190, 273 N.Ed.2d 35 (1971) (trial court found that the evidence was insufficient to award damages on the issue of loss of earnings; reversed on this issue and remanded for trial on damages for this element alone) cited by the plaintiff, to be inapplicable.

■ The issue of punitive damages can arguably stand on a different footing. However, since the general rule is that punitive damages are not accessible in the absence of compensatory damages, it appears the entire issue of damages, compensatory and punitive, should be retried.

■ On the issue of liability, defendant contends it is entitled to a new trial because of the trial court's refusal to instruct the jury on the issue of assumption of risk. The defendant urges that the evidence is capable of supporting the theory that the defendant deliberately placed himself in a position of danger between the tractor/burning rig and the Volkswagen, knowing that the highway behind the tractor was obscured with smoke and thus "assumed the risk" that an approaching vehicle might strike the tractor and propel it into him. While we agree that these actions by the plaintiff might be considered to have constituted negligence on his part, we hold that they do not rise to that level fixed by our Supreme Court to constitute an assumption of risk. The rule in Arizona is that:

> "For a person to assume the risk of harm to himself, he must have known of the facts or circumstances creating the danger or hazard, he must have comprehended and fully appreciated the consequences of his act and he must have voluntarily exposed himself thereto."

*Chavez v. Pima County*, 107 Ariz. 358, 360, 488 P.2d 978, 980 (1971).

The standard to be applied in determining knowledge as an element of assumption of risk is a subjective one. Restatement (Second) of Torts § 496(D), comment c (1965). Here, while the plaintiff may have placed himself in a position of potential danger, that position only became dangerous if the parked tractor was struck in the rear. While the potential might be high, there is no evidence that the defendant saw the approaching lettuce truck, knew it was not going to stop and continued to maintain his position of danger. Without such knowledge he cannot be said to have assumed the risk. As is stated in comment b, Restatement (Second) of Torts § 496(D):

"[His] failure to exercise due care either to discover or to understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence."

The trial court did not err in refusing the assumption of risk instruction under the facts of this case.

■ Next, the defendant urges that the trial court erred in limiting the extent of discovery and prohibiting the introduction at trial of evidence of plaintiff's conduct prior to attaining the age of eighteen years. Since this type of evidence may have a bearing on damages (we can see no other materiality) and may resurface in the event a new trial is granted on compensatory damages, we will touch briefly on this subject. It appears that the trial court's discovery orders and evidentiary rulings, were based solely on the premise that pre-eighteen year old conduct is inadmissible. This ruling is too broad.

We know of no rule of evidence applicable to a civil action which would preclude relevant evidence of plaintiff's conduct simply because that conduct occurred before the plaintiff turned eighteen years old. *See Parsons v. Smithey*, 109 Ariz. 49, 504 P.2d 1272 (1973). Rather, that evidence must be judged admissible or inadmissible under the general rules of evidence dealing with probative value, relevancy and materiality. Likewise, discovery orders should be based upon the same general evidentiary considerations.

We do not at this point express an opinion as to the admissibility of any of plaintiff's pre-eighteen year old conduct, preferring that the trial court rule on these specifics in the context of the issues which may be framed on a retrial on damages.

■ Finally, on the issue of liability, the defendant argues that the trial court improperly directed a verdict on the issue of defendant's negligence while allowing the issue of plaintiff's contributory negligence to go to the jury. We specifically disapprove of such a procedure. However, from our reading of the transcript on this issue, we conclude that counsel for defendant acquiesced in this procedure. The defendant also objects to the awarding of certain costs. We find the awarding of costs was in compliance with a previous stipulation of the parties and therefore not erroneous.

The judgment of the trial court restricting the new trial on damages to specific items of compensatory damages is reversed. The matter is remanded to the trial court with directions to enter an order, pursuant to Rule 59(i), Rules of Civil Procedure, granting the plaintiff a new trial on the issue of compensatory and punitive damages conditioned upon the defendant's acceptance of an additur in the amount of $106,206.25. If the additur is not accepted, plaintiff is entitled to a new trial on damages only.

SCHROEDER, P. J., and OGG, C. J., concur.