[Civil No. 3387. Filed February 19, 1934.]

[29 Pac. (2d) 728.]

ALBERT B. CARR, Appellant, v. IVY A. FLORIAN, Doing and Transacting Business in Phoenix and Maricopa County, Arizona, Under the Style and Fictitious and Firm Name of BARKER BAKERY, Appellee.

Mr. H. S. McCluskey, for Appellant.

Messrs. Ellinwood & Ross and Mr. Norman S. Hull, for Appellee.

LOCKWOOD, J.—Albert B. Carr, hereinafter called plaintiff, brought suit against Ivy A. Florian, doing business under the name of Barker Bakery, hereinafter called defendant, for damages which plaintiff alleged he had received as the result of a collision between an automobile in which he was riding and one operated by an employee of defendant. The case was tried to a jury, which returned a verdict in favor of plaintiff in the sum of $1,500. Defendant was satisfied with the judgment, but plaintiff was not, and, after a motion for a new trial had been made by him, the latter appealed.

There are two assignments of error, but they are based upon the same legal proposition, which is that the amount of damages awarded by the jury was so inadequate as to show they were actuated by passion or prejudice, or else that they misapplied the law or disregarded the evidence. It is contended by plaintiff, first, that certain actions of the trial court were such as to prejudice the jury against him; and, second, that the evidence, taken in the strongest manner on this point in favor of defendant, as of course it must be under the verdict of the jury, shows conclusively that the amount of damages awarded him was utterly inadequate to compensate him for the injuries which he sustained. There is no question but that the verdict of the jury establishes conclusively that defendant's employee was guilty of negligence which caused an injury to plaintiff, nor does defendant deny this. The appeal is solely as to the amount of damages awarded.

When the case was called for trial, defendant's counsel urged that it be consolidated with another case against the same defendant, and arising out of the same collision, in which Floyd Medlock was plaintiff, under section 3804, Revised Code 1928. This motion was made orally and without notice to plain-

tiff's counsel, and in the presence of the jury panel. Plaintiff's counsel did not object to the manner of the motion, or to the fact that he had been given no notice thereof, nor did he ask that the panel be excluded during the discussion of the motion. He did, however, object most strenuously to the consolidation. The court, after listening to the argument for a short time, ordered that counsel for Medlock be brought into court, and that he be also heard upon the matter. When the latter arrived, he also objected to the consolidation, announcing that he was not ready for trial, and the court, after some discussion, the full details of which do not appear in the record, announced that the motion for consolidation would be denied. It is urged that this proceeding in the presence of the jury panel prejudiced it against the plaintiff. We are at a loss to see how it could have any such effect. Had plaintiff been forced into a consolidation against his wish, there might perhaps be some merit to his contention, but the court, without, so far as the record shows, making any remark in regard to the merits of the case, and without any such remark being made by any of the counsel engaged in the discussion, ruled in favor of plaintiff's contention. There was no error in this action.

We then consider whether the evidence was such that upon any reasonable view thereof a jury would be justified in fixing the amount of damages sustained by plaintiff at not exceeding $1,500. The evidence bearing upon the extent of plaintiff's injuries may be divided into three classes: First, his own testimony; second, that of those witnesses who saw his conduct at the time of and after the accident; and, third, that of the medical witnesses. His own testimony as to the extent of his injuries, if believed by the jury, would require a far larger verdict. The undisputed evidence of an impartial, disinterested,

and unimpeached witness may not arbitrarily be disregarded by a jury, when nothing in the circumstances casts suspicion thereon. *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947. But we think human experience is such that a jury is not required, as a matter of law, to believe the testimony of so interested a party as a plaintiff in a personal injury case. It appears from the evidence of several disinterested witnesses that the car in which plaintiff was seated was moving at the rate of about twelve miles per hour when a delivery truck owned by defendant backed into it, striking its left rear fender a blow severe enough to throw the car some two or three feet to the side. After the collision plaintiff got out of the car, walked around to where the truck was, and engaged in some conversation with the driver. He then went with Medlock on some business and later to his home, but did not consult a physician until the next day. He then went to the Grunow Clinic without any assistance, walked into the office, and stated his troubles to two physicians and was X-rayed. He complained of numbness and pain of various natures and that his lower limbs did not function normally. The physicians who treated him decided from the X-ray and the symptoms detailed by him that there had probably been a fracture of some of the vertebrae and a strain on the ligaments thereof and to the spinal cord, so as to severely shock his central nervous system, and perhaps cause some effusion of blood into the spinal canal. He was placed in a plaster cast and kept there for some nine weeks. During this time he suffered a good deal of pain and flatulence, the latter to such an extent that the cast had to be partially removed. After it was completely removed, there were no visible marks of any permanent injury, but his physicians stated that, judging from the history of the case and his statements as to his condition, they were of the opinion that he had

suffered a severe and permanent shock to his central nervous system as a result of the collision, and that he would never be fit for work in a normal manner again. The cost of his hospital treatment and medical attendance came to approximately $900, thus leaving him, by the verdict of the jury, approximately $600 to compensate him for pain, suffering and loss of future earning ability. If his physicians were correct in their opinion as to his probable future condition, while it is true that the testimony in regard to his earning capacity was very meager and uncertain, yet the amount awarded would be, within the doctrine of *Ocana* v. *Ray Consolidated Copper Co.,* 22 Ariz. 112, 194 Pac. 959, grossly inadequate.

The only medical witness who testified in behalf of the defendant had had nothing to do with the treatment of plaintiff after his accident; his sole connection with the case being the taking of a series of X-ray plates some time after the accident, and his interpretation thereof. He stated most positively and directly that in his opinion there had never been a fracture of the spinal column that could in any manner have inflicted a permanent injury to plaintiff's spinal cord or nervous system, and further that, from the evidence in regard to the accident which it was alleged caused the injury, in his opinion a shock of that nature could not have injured the spinal cord. He also disagreed with the physicians of plaintiff in regard to the likelihood of a general and permanent shock to the nervous system from such an accident.

We have thus in favor of plaintiff's theory of the case his own testimony as to his subjective symptoms, and the testimony of two physicians, based on their observation of him during a treatment of nine weeks, which would have sustained a judgment that he was seriously and permanently injured. We have, on the other hand, the testimony of his conduct im-

mediately after the accident, and that of another physician as to his objective condition as shown by X-rays, which we cannot say would not justify a reasonable man in believing that the actual injuries suffered by plaintiff were negligible, and that plaintiff's physicians were mistaken in both their diagnosis and prognosis of the case, and as to the proper treatment to be given thereto.

As we stated in the companion case of *Medlock* v. *Florian*, 42 Ariz. 558, 28 Pac. (2d) 621, 622:

" . . . The rule to be applied to a record of this nature by an appellate tribunal is well set forth in the case of *Norland* v. *Peterson*, 169 Wash. 380, 13 Pac. (2d) 483, 484, as follows:

" 'The trial court, in passing upon a motion for new trial based upon the ground that the verdict of the jury is inadequate or excessive, will consider the evidence, and, if that court is of the opinion that substantial justice has not been done, it will, in the exercise of its duty, grant a new trial. *Daigle* v. *Rudebeck*, 154 Wash. 536, 282 Pac. 827. But the function of this court is different, and the ruling of the trial court upon the motion will not be disturbed upon appeal, unless it can be said that the verdict is so far inadequate or so excessive as to be without support in the evidence, or it must appear that the verdict was the result of some extrinsic consideration, such as bias, passion, or prejudice on the part of the jury. *Dorian* v. *Benj. E. Boone, Inc.*, 152 Wash. 681, 279 Pac. 107.' "

There is no evidence which would justify us in concluding that the jury was actuated by passion, prejudice, or a misconception of the law applicable to the damages to be awarded in cases of this nature, unless we assume that no reasonable man could conclude from the evidence that plaintiff had failed to sustain the burden imposed upon him of proving that his injuries resulting from the accident were of a serious and permanent character. As we have said, we would not be justified on the record in so holding.

For the foregoing reasons, the judgment of the superior court of Maricopa county is affirmed.

ROSS, C. J., and McALISTER, J., concur.