503 P.2d 794

Virgil D. CREAMER and Jane Doe Creamer, husband and wife, and Kathy Jean Samoyoa, Appellants,

v.

Marshall TROIANO, Appellee.

No. 10841–PR.

Supreme Court of Arizona,
In Banc.

Nov. 29, 1972.

**574**

Lesher & Scruggs, by D. Thompson Slutes, Tucson, for appellants.

D'Antonio & Videen and Silver, Ettinger & Karp, by Jack A. Ettinger, Tucson, for appellee.

HAYS, Chief Justice.

This case is before us on a petition for review of a decision of the Court of Appeals, Division Two, reported at 16 Ariz. App. 538, 494 P.2d 738 (1972). That opinion affirmed a judgment of the Superior Court granting a new trial to the plaintiff when the defendants refused to accept an additur of $6,000 after a jury verdict of $1,500.

The decision of the Court of Appeals is vacated, and the judgment of the Superior Court is reversed and remanded with directions.

Several issues might have been argued, but were not—such as the propriety of the trial court's directing a verdict in favor of the plaintiff. However, the only issue presented is the correctness of the trial court's order granting a new trial because of the refusal of the defendants to accept the additur.

The case arose out of the fact that Kathy Samoyoa, while driving a pickup truck owned by her stepfather, Virgil Creamer, rear-ended plaintiff's car. Since she was a minor at the time of the accident, the family purpose doctrine was invoked and her mother and stepfather were joined as defendants, though no cause of action was pleaded against them!

Plaintiff began to show symptoms of a whiplash injury the day after the accident and was treated by an osteopath and several M.D.'s. The medical testimony was in sharp conflict. One doctor thought that he might have a protruding disc which could be verified by a test that plaintiff refused to take. The doctor said that an operation would probably cure all of the trouble. Another doctor stated that a week of traction would end plaintiff's pain. Plaintiff tried three days of traction and got 50% relief. He was examined by a defense doctor who stated that plaintiff would not cooperate and was probably malingering. In court, plaintiff carried his head in a peculiar position and moved as though his head, neck and shoulder were "frozen." His car damages were treated as in issue, even though not pleaded in his complaint. One mechanic testified that the major transmission damage was due to the car's old age and not to the accident. Plaintiff's medical bills totaled about $700.

Defendants had a detective keep plaintiff under surveillance for several days just before the trial. The detective's testimony indicated that plaintiff's movements were normal in every way, and that outside of the courtroom he did not walk like a person with neck and shoulder stiffness. Prior to the trial, before the detective's report had been received, defendants offered to settle for $7,500. The trial court directed a verdict for plaintiff and submitted to the jury only the amount of damages.

The tests for reviewing the damages awarded laid down by the cases in this court, though not always expressed in the same language, are reasonably consistent and cover a long period of time. We have re-examined them from 1934 to the present time and set them out briefly here.

Carr v. Florian, 43 Ariz. 149, 29 P.2d 728 (1934). In that case, the trial court refused a new trial to a plaintiff who claimed the verdict was inadequate. We held that the trial judge's ruling would not be disturbed unless the verdict was so inadequate as to be without support in the evidence or was the result of passion and prejudice.

Keen v. Clarkson, 56 Ariz. 437, 108 P.2d 573 (1940). In that case, the trial court denied a new trial demanded because defendant thought that the verdict was excessive. We held that it was not for the trial court, or for this court, to weigh the evidence and determine the proper amount of damages, and that we would not disturb the verdict on account of its size, where the trial court was satisfied with the amount.

Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470 (1955). In that case, the verdict was for the defendant, and the trial court granted plaintiff a new trial. We held that we would not disturb an order granting a new trial unless the probative force of the evidence clearly demonstrated that the trial court's action was wrong and unjust, and therefore an unreasonable and manifest abuse of discretion.

Young Candy & Tobacco v. Montoya, 91 Ariz. 363, 372 P.2d 703 (1962). In that case, a new trial was requested on the ground of excessive damages, and it was denied. We held that unless the damages were flagrantly outrageous and extravagant, the trial court could not draw the line, for it had no standard by which to ascertain the excess. The criterion, we said, was whether the verdict was so manifestly unfair, unreasonable and outrageous as to shock the conscience of the court.

Meyer v. Ricklick, 99 Ariz. 355, 409 P.2d 280 (1966). In that case, the trial court denied a motion for a new trial based upon inadequate damages. We held that we would view the evidence in a light most favorable to sustaining the verdict; that reasonable men could have agreed with the jury's figure; and that the verdict would be sustained unless it was so exorbitant as to indicate passion, prejudice, mistake, or a complete disregard of the evidence and instructions.

Larriva v. Widmer, 101 Ariz. 1, 415 P.2d 424 (1966). This case was an appeal from a verdict on the ground that it was excessive. We held that the verdict would not be overturned unless it was the result of passion and prejudice, and that the underlying question was whether it was so manifestly unfair, unreasonable and outrageous as to shock the conscience of this court.

Tucson Utilities Supplies v. Gallagher, 102 Ariz. 499, 433 P.2d 629 (1967). There, a new trial was requested on the ground of inadequate damages. The motion was denied. We held that we must sustain the verdict if there was substantial evidence from which reasonable men could have found the amount in question, and that there was no suggestion that the verdict was the result of some extrinsic consideration such as bias, prejudice or jury misconduct.

The above seven cases are a representative rather than an exhaustive list of our cases on the subject of the size of jury verdicts. It is interesting to note that in every single one of these cases we affirmed the trial court's order. That in itself should carry a strong inference that one of the key factors in our decisions is to give the trial judge the benefit of the doubt. Like the jury, he has had the opportunity to observe the witnesses' demeanor on the stand, and his ruling on additur, remittitur, and new trial, because of an inadequate or excessive verdict, will generally be affirmed, because it will nearly always be more soundly based than ours can be. Thus, *Carr, supra,* nearly forty years ago set out a rule which is still good today.

The difficulty is that each case is slightly different, and we have to adjust to them

as they come before us. Hence, in the later cases, the reasons for our opinions have not always been stated in the same words. It is also true that emotions such as passion and prejudice are rarely seen from the reporter's transcript, and must be sought— in this court—in the size of the verdict compared to damages actually proved, and tempered by how much of the damages are effectively contradicted, the prestige of the doctors who testify, undercover investigators, etc.

In its early days, the Court of Appeals closely followed our decisions. *See* Garcia v. Tucson, 1 Ariz.App. 83, 399 P.2d 704 (1965).

Even as late as 1969, in Hardy v. So. Pac. Empl. Ass'n, 10 Ariz.App. 464, 459 P.2d 743 (1969), Division Two quite correctly stated that the amount of the verdict is for the jury to determine; that it is not the function of either the trial court or the appellate court to determine the amount of damages; and that if a case has been submitted on correct rulings and instructions, and the verdict is within the range of credible evidence, the verdict will not be deemed to be the result of passion and prejudice.

However, in Zadro v. Snyder, 11 Ariz. App. 363, 464 P.2d 809 (1970), where the trial court had granted additur, the Court of Appeals held Rule 59(i), Arizona Rules of Civil Procedure, 16 A.R.S., *changed* the test to the following: If the trial judge determines that there was passion and prejudice reflected in the verdict he *must* grant a new trial; but if he determines that the verdict is simply insufficient, with no known explanation, he may grant *either* a new trial or an additur. By way of dictum, the court added: "We do not believe that . . . where there is a conflict in the evidence as to damages, that the trial court should be reversed . . . ."

In the instant case, the Court of Appeals applied *Zadro*, and affirmed, holding that the trial court must first determine whether the verdict is insufficient, or is the result of passion and prejudice; that the trial court must have determined that the cause was merely insufficiency; and that *where there is a conflict in the evidence as to damages, the trial court's ruling should not be reversed.*

Appellants complain that the decision in the instant case gives carte blanche to the trial judge whenever the evidence on the extent of the damages is in conflict; that in nearly every personal injury case the evidence as to the injuries is in conflict; hence, the opinion gives carte blanche to the judge in all personal injury cases.

We do not agree with the *Zadro* position that the trial judge should not be reversed when the amount of damages is in conflict. In fact, in *Meyer, supra*, we explained how the jury—in a conflict of evidence case— could believe some evidence and disbelieve other evidence, so that what appeared to be an inadequate verdict was really adequate. It is true that in *Meyer* we did not reverse, but that was because the trial judge denied a new trial and let the jury's verdict stand. In the instant case, the jury might very well have believed defendant's physician (who said that plaintiff was malingering) and might have believed the detective (who said the plaintiff carried himself normally when he did not know that he was being observed) and might have believed the mechanic (who said the transmission damage was not caused by the accident). Under those circumstances, the award would appear to be for a considerable sum over the proved out-of-pocket expenses.

From what we have written, it is obvious that the test for reviewing the granting or refusing of a trial judge's adjustment of a verdict is complex and can only be solved by an ad hoc approach. Almost always when there is a conflict in the evidence, the trial judge should not interfere with what is peculiarly the jury's function, and if he does not, we will nearly always uphold him. If there is no conflict in the evidence on items that obviously were omitted from the verdict, the trial judge must adjust, and we will uphold him if he does. Behind all of these tests still

stands the original doctrine—that if the verdict is supported by adequate evidence, it will not be disturbed, and the greatest possible discretion is in the hands of the trial judge. In this court, the ultimate test will always be justice, and any case before us which shows an unjust result because of the granting or denial of either additur or remittitur, will be reversed. Each case will be considered upon its own facts.

In the case at bar, we have a situation where the judge has not only directed a verdict for the plaintiff in a negligence suit, but has also directed the amount, despite very considerable evidence that the plaintiff was exaggerating his damages. If the right to trial by jury means anything, it means that these defendants have been deprived of it.

The opinion of the Court of Appeals is vacated; the order of the Superior Court granting a new trial is reversed; and that court is directed to reinstate the $1,500 judgment obtained by the plaintiff. Anything in *Zadro, supra,* contrary to our views expressed herein, is overruled.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD, and HOLOHAN, JJ., concur.