647 P.2d 1159

**Gilbert R. HERNANDEZ and Josephine I. Hernandez, husband and wife, Plaintiffs/Appellees,**

v.

**The STATE of Arizona, Defendant/Appellant.**

**No. 2 CA–CIV 4249.**

Court of Appeals of Arizona, Division 2.

April 21, 1982.

Rehearing Denied May 28, 1982.

Review Denied June 29, 1982.

Miller & Pitt, P.C. by Richard L. McAnally and John L. Tully, Tucson, for plaintiffs/appellees.

Lesher, Clausen & Borodkin, P.C. by Monte C. Clausen, Tucson, for defendant/appellant.

## OPINION

BIRDSALL, Judge.

This is the second time this case has been before this court on appeal. In *Hernandez v. State*, 128 Ariz. 30, 623 P.2d 819 (App. 1980), we affirmed the trial court's order granting a new trial to Gilbert and Josephine Hernandez, husband and wife, on the issue of damages for personal injuries of Josephine. In that same opinion we vacated the trial court's order granting a new trial on the issue of damages for the wrongful death of their minor daughter, Anita.

This appeal is from a judgment of $1,525,000 against the appellant, the State of Arizona, entered on a jury verdict in favor of Mr. and Mrs. Hernandez for damages for the injuries to Mrs. Hernandez.

The appellant claims on appeal:

1) That the trial court erred in denying its motion for remittitur, or in the alternative, a new trial on the damages issue;

2) That it was error to prohibit the appellant from showing the facts of the accident;

3) That the court should have ordered a mistrial when a doctor-witness for the appellees testified that the daughter, Anita, had been killed in the accident, and

4) That the trial court erred in not allowing the appellant to reopen to introduce some exhibits.

We affirm.

In the first trial in February, 1980, the jury returned a verdict of $52,487 for damages to the appellees resulting from Mrs. Hernandez' injuries. The special damages alone approximated this amount, leaving little or nothing for her permanent injuries, pain and suffering. The trial court granted an additur of $75,000, which the state refused to accept, resulting in the new trial order. In the first trial the appellees had asked the jury for $850,000. In their motion for the additur they requested $350,000. There have thus been several different evaluations of these damages.

The one-car accident occurred in September, 1976, on the interstate highway just east of Benson, Arizona. Negligent maintenance and construction of the highway at that location caused a slippery condition which in turn caused Mr. Hernandez to lose control of his pickup truck.

The truck rolled several times causing injuries to all the passengers and driver and resulting in the death of Anita. Mrs. Hernandez, who was riding in the back of the truck, was by far the most seriously injured of the survivors. Her left leg was so badly broken and mangled that amputation of that limb above the knee was required. She also suffered a fracture of her right hip and a fractured pelvis. She spent 71 days in the hospital following the accident and was hospitalized twice in 1977 for surgical revision of the stump of her left leg. The removal of skin from other parts of her body to accomplish the necessary skin grafts on her stump has left extensive permanent scars. Prior to the first trial an artificial leg was fitted to her stump. This was unsuccessful, but the evidence in her second trial showed that this prosthesis is planned again. It is questionable whether this will be successful. Future hospitalization will be necessary for treatment to the left leg. She also is going to need a hip replacement for the right leg and faces probable back surgery. All of the trauma has caused extensive arthritic development. In the meantime, she has been confined to a wheelchair with attendant problems.

It is apparent from an examination of the transcripts from both trials that the extent of her injuries and the necessity and cost of future medical care were underestimated in the first trial. The total (past and future) medical expense of some $47,000 proven in the first trial, had grown to $150,000 in the second. The necessity of future surgery—possible in the first trial—had become definite in the second. In the first trial the second attempt to use a prosthetic left leg was not planned.

Mrs. Hernandez was 35 years old at the time of the accident. Her life expectancy at the time of the trials was 38 years and 39 years. Due to the extent of her injuries, including the pelvic fractures, a medical decision to perform a tubal ligation was made in February, 1977, and this was done during her second hospitalization, so she cannot have more children. The arthritis has significantly increased the pain she was already experiencing. She has even had phantom pain where the left leg would be.

## DAMAGES VERDICT

■ The appellant sought a remittitur to $350,000 from the verdict in the second trial, or a new trial again on the issue of damages. It argues that great weight should be given to all the prior evaluations of the damages. This is a novel, interesting argument, but we do not find it persuasive. It is obvious to us that the first jury verdict was miserly and, in retrospect, the additur of $75,000 was inadequate. The verdict in the second trial and the court's denial of a remittitur should remain undisturbed unless it is clearly the result of passion or prejudice or clearly excessive. *Waqui v. Tanner Brothers Contracting Co., Inc.,* 121 Ariz. 323, 589 P.2d 1355 (App.1979).

■ We recently considered a contention that the trial court erred in refusing a remittitur or new trial in *Garcia v. City of South Tucson,* 131 Ariz. 315, 640 P.2d 1117 (1981), where the verdict for personal injuries was $3,592,213. We held that where the trial court has refused to interfere with the jury's determination of damages we cannot interpose our judgment unless convinced that the verdict is so outrageously excessive as to suggest, at first blush, passion or prejudice. Not only are we unconvinced here, but our review of the evidence leads us to the conclusion that this may have been the first fair evaluation made of the damages. Many Arizona Supreme Court decisions have considered this claimed error. *See Caldwell v. Tremper,* 90 Ariz. 241, 367 P.2d 266 (1962); *Southern Pacific Transportation Co. v. Lueck,* 111 Ariz. 560, 535 P.2d 599 (1975); *Creamer v. Troiano,* 108 Ariz. 573, 503 P.2d 794 (1972). The verdict was not excessive.

## MOTION IN LIMINE

■ At the commencement of the second trial the court granted the appellees' motion to preclude the appellant from introducing any evidence of the facts of the accident. This ruling was eminently correct. The appellant argued that the jury should be informed that Mrs. Hernandez was riding in the bed of the truck, not the cab, and that evidence which it claimed showed contributory negligence on the part of her husband should be permitted. We disagree. This evidence was not relevant on the issue of damages. In our first opinion in this case we said:

> "On appeal the state argues that an otherwise inadequate verdict may be adequate in a case like this one, because the jury was entitled to compromise the amount of the verdict based on the contributory negligence of Gilbert Hernandez. We disagree. Once the plaintiffs were entitled to recover, it was incumbent upon the jury to award damages to which plaintiffs were legally entitled as shown by the evidence." 128 Ariz. at 32, 623 P.2d at 821.

We adhere to that holding. The appellant has cited no authority for its position and we need not consider it further.

## DEATH OF THE CHILD

■ Dr. Stuart Holtzman testified on the second and last day of the second trial. His specialty is physical medicine and rehabilitation. He was not a witness at the first

trial, since he did not see Mrs. Hernandez until February, 1981. He was asked about the information he was given regarding his patient's past medical treatment, which he briefly reviewed for the jury. He was then asked:

"Q. Did you undertake to examine her after reviewing the records?

A. Yes, I did.

Those are things I found out when I examined her records.

When I evaluated her, she told me, of course, of her age at that time, that it was and still is 39.

That her primary work was a homemaker; that she had had three children, *one was killed in the accident.*" (emphasis added)

No objection was made at that time, but during a later recess the appellant moved for a mistrial. We have no transcript of that proceeding, but the appellees concede the motion was made and denied. The evidence was not mentioned again in the trial, including arguments to the jury. The trial court offered to instruct the jury to disregard the evidence but the appellant refused this offer. The jury was instructed on the elements of damage they could properly consider and under that instruction any consideration of the child's death would have been improper. A motion for mistrial is addressed to the sound discretion of the trial judge, who is in the best position to determine whether the prejudicial matter will preclude a fair trial. *E. L. Jones Construction Co. v. Noland,* 105 Ariz. 446, 466 P.2d 740 (1970). The court was apparently satisfied that the mere mention of the child's death, with nothing more, would not have an overly prejudicial effect. *See Betz v. Goff,* 5 Ariz.App. 404, 427 P.2d 538 (1967). We find no abuse of discretion, particularly when the court could have instructed the jury that the appellees had already been fully and adequately compensated for that loss. This was not a bell which could not be "unrung." There existed an honest, simple explanation for the jury why that evidence could not be considered.

## THE TAX RETURNS

One of the elements of appellees' damage was the loss of income resulting from Mr. Hernandez' inability to supervise his business during his wife's critical hospitalization. The evidence showed this to be approximately $8,500, at the most. No tax returns were offered as proof of this loss, nor were any requested during pre-trial discovery. He was the last witness to testify on the second day of trial. On cross examination he was asked:

"Q. Have you brought your income tax returns to show us what you had been averaging before as opposed to afterwards?

A. I don't have it with me, no."

Apparently (we have no transcript and are relying on both parties' arguments in their respective briefs) the morning of the third day—which was devoted to argument—he brought tax returns for the years 1970–1972 and 1979–1980. Missing were the returns for the critical period, 1973–1976. Apparently (again) before the jury, the appellees' counsel handed the judge a folder indicating that Mr. Hernandez had brought tax returns. The appellees then rested their case and defense counsel rested subject to reviewing the returns. After discovering that the relevant returns were missing the appellant moved to reopen to introduce the returns, not for their evidentiary value as they probably had none, but to show the jury that the relevant returns had not been produced. The motion to reopen was denied. The appellant claims the jury was deceived and that this was the purpose of appellees' counsel's conduct. No authority is cited for the contention that we should "do something" about this on appeal. Again we defer to the discretion of the trial judge on a matter which was peculiarly within his judgment and control.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.