NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PAMELA S. ROTALO,
*Plaintiff/Counter-Defendant/Appellee,*

*v.*

ROBERT G. SAHD,
*Defendant/Counter-Claimant/Appellant.*

No. 1 CA-CV 16-0365
FILED 6-22-2017

Appeal from the Superior Court in Maricopa County
No.  CV2013-051907
The Honorable Susan M. Brnovich, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Plaintiff/Counter-Defendant/Appellee*

Zapata Law, PLLC, Chandler
By Julio M. Zapata
*Counsel for Defendant/Counter-Claimant/Appellant*

_____

**MEMORANDUM DECISION**

Judge Jay M. Polk[1] delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia K. Norris joined.

_____

**P O L K**, Judge:

¶1   Defendant/Counter-Claimant Robert Sahd ("Sahd") appeals the trial court's post-trial orders denying his: (1) motion for a new trial; (2) motion for sanctions; (3) motion to alter or amend judgment (set-off); and (4) application for attorney fees. Because the trial court did not err, we affirm.

**BACKGROUND**

¶2   Plaintiff/Counter-Defendant Pamela Rotalo ("Rotalo") and Sahd began dating in 2008 and became engaged for the first time in 2010. Sahd gave Rotalo an engagement ring and travel ring, appraised at $134,200 and $2,500 respectively. In July 2012, Rotalo broke off the engagement and returned the rings to Sahd. The couple later reconciled, and Sahd gave Rotalo the rings again upon their second engagement in February or March 2013. The relationship ended a couple of months later. Contending that the rings were an unconditional gift, Rotalo retained them after the second break-up.

¶3   During their relationship, several financial transactions occurred between the couple. As relevant here, in 2012, Rotalo made two loans to Sahd, the first for $166,835.20 and the second for $100,000. Both loans were evidenced by signed promissory notes. Shortly after the parties' first break-up in July 2012, Rotalo sent Sahd a letter demanding $456,532.47 purportedly owed under the two promissory notes, including accrued interest and late fees. In September 2012, as payment toward his outstanding debt, Sahd conveyed to Rotalo six acres of raw land in New Mexico (the "Land"). He also made additional cash payments to her totaling $8,000.

_____

[1]  The Honorable Jay M. Polk, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

¶4            In August 2013 (approximately four months after their second break-up), Rotalo sued Sahd for breach of contract (alleging he had defaulted on the notes), unjust enrichment, and conversion. Sahd answered and counterclaimed for breach of contract (alleging Rotalo had failed to return the rings), breach of the duty of good faith and fair dealing, unjust enrichment, and conversion.

¶5            Following a three-day trial, the jury found: (1) in favor of Rotalo on her promissory note claim in the amount of $332,869.31; (2) in favor of Sahd on his conversion claim but awarded zero ($0) damages; and (3) that the rings were a conditional gift that should be returned to Sahd, and awarded Sahd $2,500 for the travel ring, which had been lost.[2]

¶6            Sahd filed several post-trial motions that are the subject of this appeal. Arguing the jury erred in calculating the set-off amount on his conversion claim award, Sahd first moved to alter or amend the jury verdict in favor of Rotalo. *See* Ariz. R. Civ. P. 59(d) (2016).[3] Next, asserting Rotalo and her counsel committed fraud on the court, Sahd moved for a new trial on Rotalo's promissory note claim and for sanctions. *See* Ariz. R. Civ. P. 59(a). Lastly, Sahd moved for an award of attorney fees. The trial court denied all those post-trial motions and awarded Rotalo, as the prevailing party, $132,646.20 in attorney fees and costs.

¶7            Final judgment was entered in favor of Rotalo in the amount of $463,015.51,[4] and she was ordered to return the engagement ring to Sahd. *See* Ariz. R. Civ. P. 54(c). Sahd timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona

---

[2]        At the conclusion of Rotalo's case-in-chief, Sahd successfully moved for a directed verdict on Rotalo's conversion claim, thereby eliminating that claim from the jury's consideration. The record is not clear as to the disposition of the remaining claims; however, neither party has raised those claims as an issue on appeal.

[3]        We cite to the procedural rules in effect at the time of trial in 2016.

[4]        The $463,015.51 consists of the following: (a) $332,869.31 on Rotalo's claim for breach of contract; (b) less the $2,500 awarded to Sahd for the value of the travel ring; (c) plus $127,392.30 for Rotalo's attorney fees; and (d) plus $5,253.90 for Rotalo's taxable costs.

Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and 12-2101(A)(1) (2017).[5]

**DISCUSSION**

**¶8**      Our review of each of the rulings Sahd challenges is limited to whether the trial court abused its discretion. *See First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015) (denial of motion for new trial); *Hunnicutt Const., Inc. v. Steward Title and Tr. of Tucson Tr. No. 3496*, 187 Ariz. 301, 307 (App. 1996) (decision to award or deny sanctions); *Mullin v. Brown*, 210 Ariz. 545, 547, ¶ 2 (App. 2005) (denial of a Rule 59 motion to alter or amend verdict); *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 205, ¶ 5 (App. 2014) (award of attorney fees). A court abuses its discretion when it commits an error of law or fails to consider evidence in reaching a discretionary conclusion or if "the record fails to provide substantial evidence to support the trial court's finding." *Flying Diamond Airpark, LLC v. Meinberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007).

## I.    Motion for New Trial / Motion for Sanctions

**¶9**      Sahd's arguments that the trial court erred in denying his motions for a new trial and for sanctions arise from the same set of facts. Accordingly, we address them together.

**¶10**     As relevant here, the trial court may grant a new trial if "the verdict, decision, findings of fact, or judgment is not justified by the evidence or is contrary to law." *See* Ariz. R. Civ. P. 59(a)(8). Additionally, the court may impose "serious sanctions" if a party or attorney knowingly fails to make a timely disclosure of "damaging or unfavorable information" required under Rule 26.1, such as the identity of persons who "may have knowledge or information relevant to the events, transactions, or occurrences that gave rise to the action," and "a list of the documents . . . known by a party to exist . . . which that party believes may be relevant to the subject matter of the action." *See* Ariz. R. Civ. P. 26.1(a)(4), (a)(9), and 37(d).[6]

---

[5]      Absent material revision, we cite the current version of statutes unless otherwise indicated.

[6]      As pertinent here, Rule 26.1(a)(4) was amended in 2017 to require disclosure of persons who "may have knowledge or information *relevant to the subject matter of the action*." (Emphasis added.) The version in effect in

¶11 Sahd asserts that Rotalo and her counsel presented previously undisclosed and "fabricated" evidence to the jury. Specifically, Sahd contends that Rotalo falsely "testified that [Sahd] sold an acre lot" to a third party, Kamal Irani and/or Mrs. Irani (aka "Aronni" or "Ironni," collectively "Irani") for $31,000. He argues the testimony was false because the sale never took place and, in any event, neither Irani nor the alleged sale transaction was included in Rotalo's disclosure statements or listed as a contested issue in the joint pretrial statement. At the root of this argument is the parties' dispute as to how they agreed to value the Land and, thus, whether Sahd's conveyance of the Land completely satisfied his debt to Rotalo. Rotalo's position at trial was that the parties had agreed on a value of $30,000 per acre ($180,000 total), which would have merely reduced Sahd's debt, but not eliminate it. In contrast, Sahd asserted the parties agreed to a value of $75,000 per acre ($450,000 total), thereby extinguishing his debt in its entirety. Sahd posits that, based on its verdict, the jury must have relied on Rotalo's account of the purported Irani transaction.

¶12 Sahd cites many cases and procedural rules for the premise that Rotalo's alleged failure to disclose the Irani transaction warrants a new trial and sanctions. Because Sahd incorrectly describes Rotalo's testimony and the record, however, such authority is not relevant to our decision.

¶13 At trial, Rotalo testified she and Sahd agreed to value the Land at $30,000 per acre. Asked how that agreement came about, she responded: "Well we *had a discussion* where [Sahd] had sold one or two parcels within the last year to [Irani] for 31,000 [per acre]; so we would value [the Land] at 30,000 [per acre]." (Emphasis added.) Sahd objected to the testimony for lack of disclosure, and the trial court sustained the objection and ordered the testimony stricken. Rotalo's counsel then rephrased the question, asking Rotalo, "How in your mind did you decide that $30,000 per acre was a fair price for the [Land] that [Sahd] was going to deed to you?" Rotalo answered, "Because *he* [Sahd] *told me* he had sold two other parcels for $31,000.00 [per acre]. And he [Sahd] said that he would value [the Land] at 30,000 [per acre]; and I said that's fine." (Emphasis added.) Sahd again moved to strike for lack of disclosure and for a mistrial. After dismissing the jury, the court engaged in the following dialogue with counsel:

---

2016 required disclosure of persons who "may have knowledge or information *relevant to the events, transactions, or occurrences that gave rise to the action*." (Emphasis added.)

THE COURT:  Mr. McCarthy, [Rotalo's counsel] this sounds like a new legal theory.

MR. McCARTHY:  It isn't a new legal theory at all, your Honor.  It's just - - I mean to - - Mr. Zapata [Sahd's counsel] suggested before we started that he - - that Mr. Sahd was going to testify what he had gotten appraisals for, as a way to determine what he thought was a fair value for the land. [Rotalo] has done exactly the same thing.

And, in addition, she is not - - there can't be a lack of disclosure because she is talking about land that Mr. Sahd sold to a specific party.  He can't have not known about it, he did it.

*     *     *

THE COURT (to Sahd's counsel):  Has [Rotalo] ever told you in a deposition, or in any of these declarations how she came up with that figure?

MR. ZAPATA:  No.  Oh, the figure for - -

THE COURT:  The 180,000.00?

MR. ZAPATA:  Oh, yeah.  It's in her declaration, the figure of a - - of 108 - - I'm sorry.  It's not in her declaration, it may be her disclosure.  The 180,000 was just an agreed upon price between Mr. Sahd and Ms. Rotalo.  That's all that she disclosed.

Mr. Sahd in response said, no, there were two appraisals that we talked about; one at [$450,000] and one at [$570,000].

*     *     *

MR. McCARTHY:  He didn't take her deposition.

THE COURT:  You never took her deposition?

*     *     *

MR. ZAPATA:  No.  Well she's got to volun - - that's just a disingenuous position, your Honor.

6

Rule 26.1 has a voluntary affirmative obligations [sic] on both parties to disclose voluntarily the information.

If they choose to hide evidence, then they're going to be barred from using it.

THE COURT: Well, but she's sticking with her $30,000.00.

\*　　　\*　　　\*

MR. ZAPATA: Oh, no. She's now saying that I guess that [Sahd] sold some property, which [Sahd] is unaware of selling.

I just asked him whether there was any property that he sold. He said, no, I haven't sold any of those acres.

And she's contending without foundation that someone - - and she identified the name, I don't know who it was - - purchased a lot for $30,000.00.

THE COURT: *That's not what she said. Or she said that that is what he told her.*

*And she's relying on your client's statement to her, which is an admission by party opponent.*

\*　　　\*　　　\*

THE COURT: Okay. So the motion for mistrial is denied.

I'll allow her answer to stand.

(Emphasis added.) Thus, Rotalo did not, as Sahd suggests, testify that Sahd, *in fact*, sold an acre lot to Irani for $31,000; instead, she testified that she and Sahd agreed to value the Land at $30,000 per acre because *Sahd had told her* that he had sold other New Mexico property to Irani for $31,000 per acre.[7]

---

[7]　　　Upon examination by Rotalo's counsel, Sahd admitted that he knew Irani but said that he did not recall signing an agreement with Irani to transfer one acre of vacant land in New Mexico for $31,000. In rebuttal, Rotalo testified she had personal knowledge of the transaction between Sahd and Irani because she helped transfer funds from Irani's IRA account

**¶14** In addition, contrary to Sahd's assertion on appeal, the record shows that Rotalo did, indeed, disclose the basis for her belief that the parties had agreed the Land should be valued at $30,000 per acre. The joint pretrial statement filed two weeks before trial listed both: (1) as a contested issue of fact and law, "[the parties] disagree as to the value of the [Land] at the time the property was conveyed to [Rotalo] by [Sahd];" and (2) as a material issue of fact or law by Rotalo, Sahd conveyed the Land for "an agreed-value of $30,000 per acre, thus making it the equivalent of [Sahd] paying a total of $180,000." Moreover, Rotalo's assertion that the value was based on a prior conveyance echoed her declaration filed in summary judgment briefing long before trial. In her sworn statement filed on December 31, 2014, Rotalo denied that she and Sahd had agreed that Sahd's conveyance of the Land to Rotalo was in full satisfaction of all his debts to her, stating: "The only discussion regarding the value of the [Land] Mr. Sahd and I had was that the [Land] would be valued at $30,000 an acre . . . because that was the price at which Mr. Sahd was offering the land for sale to third parties. I am aware that Mr. Sahd sold one acre of [a similar property] to a third party for $31,000." Although she did not mention Irani by name, Rotalo's declaration more than one year before trial was consistent with her trial testimony. Thus, Sahd was on notice of Rotalo's evidence regarding the basis for the parties' agreement of the Land's value and had a reasonable opportunity to prepare. *See Bryan v. Riddel*, 178 Ariz. 472, 476 n.5 (1994) (recognizing that the disclosure rules do not require detailed "scripting" of expected testimony; "The object of disclosure, as with all discovery, is to permit the opponent a reasonable opportunity to prepare for trial or settlement – nothing more, nothing less."). Finally, although Sahd knew that Rotalo's position was that the Land was worth $30,000 per acre, as his counsel acknowledged to the court, he did not depose her to ask her for facts supporting that value.

**¶15** In denying Sahd's motion for a new trial, the trial court found that:

> As determined at trial, the truth of whether the [Irani] transaction occurred was not the issue. The conversation with [Sahd] is what [Rotalo] used as a basis for her belief that the

---

to Sahd. Rotalo explained that, as she understood it, Sahd and Irani signed an agreement whereby Sahd would receive $31,000 for one acre, but the transfer had not happened. Consistent with her prior testimony, Rotalo further stated that, based on Sahd's agreement with Irani, she and Sahd agreed to value the Land at $30,000 per acre.

[Land] was valued at $30,000 per acre. [Rotalo] had no duty to disclose every conversation she had with [Sahd].

\*      \*      \*

If [Sahd] had wanted more detail about [Rotalo's] basis for the valuation, he could have deposed [her]. [Sahd's] choice to proceed without deposing [Rotalo] does not create [an] additional obligation on [Rotalo] to disclose details otherwise obtained in a deposition and that [Sahd] knew himself. Additionally, the testimony about [Rotalo's] conversation with [Sahd] was not the only evidence supporting the verdict. It is very likely that the jury would have returned the same verdict absent that evidence.

These findings are supported by the evidence and the record. Accordingly, we conclude that the trial court did not abuse its discretion in denying Sahd's motions for a new trial and for sanctions.

## II.    Motion to Alter or Amend Judgment (Set-off)

¶16      Sahd argues the trial court erred in denying his motion to alter or amend the judgment (set-off) because the jury awarded insufficient damages on his conversion claim. He contends the jury's award of $0 in damages is inconsistent with a favorable verdict and, as a result, the judgment against him should be reduced by the amount of his conversion claim ($76,000).

¶17      In reviewing the trial court's determination of a proposed adjustment of a verdict, we follow the doctrine "that if the verdict is supported by adequate evidence, it will not be disturbed, and the greatest possible discretion is in the hands of the trial judge." *Tryon v. Naegle*, 20 Ariz. App. 138, 140-41 (1973) (citing *Creamer v. Troiano*, 108 Ariz. 573, 575-77 (1972) (recognizing that trial judge's ruling on additur, remittitur, and new trial on a claim of an inadequate or excessive verdict generally will be affirmed because, like the jury, the trial judge has had the opportunity to observe the witnesses' demeanor on the stand, and the trial judge's ruling will nearly always be more sound than the appellate court's).

¶18      As to Sahd's conversion claim and set-off, the jury was given the following instruction:

Mr. Sahd also claims that Ms. Rotalo refused to return other items of personal property (in addition to the engagement

ring and the travel ring), which are (1) two framed R.C. Gorman prints; (2) $5000 loaned to Ms. Rotalo for her son; (3) $6000 in damages to the Mercedes; (4) $65000 of jewelry taken by Ms. Rotalo from Mr. Sahd's Arizona residence.

\* \* \*

A set-off is a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor.

\* \* \*

*If you find that Ms. Rotalo is owed money (on her claims) and you also find that Mr. Sahd is owed money*, if the amount of money owed Ms. Rotalo is more than the amount owed to Mr. Sahd, *you can setoff the amount* owed and your verdict will be for Ms. Rotalo for the difference.

(Emphasis added.)

**¶19** In rendering its verdicts, the jury completed the verdict forms by hand-writing in the amount of the damages, $332,869.31 in favor of Rotalo and $0 in favor of Sahd. As instructed, *if* the jury found that Sahd was owed money and wished to award it, it could set-off that amount against Rotalo's verdict for the difference. After hearing testimony from Rotalo and Sahd, the jury chose not to award Sahd money damages; hence, no set-off was necessary. *See Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000) ("The credibility of a witness' testimony and the weight it should be given are issues particularly within the province of the jury.") (internal quotation marks omitted); *see also Elliott v. Landon*, 89 Ariz. 355, 357 (1961) (presuming jurors follow the instructions given). Given this record, adequate evidence supports the verdict. We find no abuse of discretion.

## III. Denial of Attorney Fees

**¶20** Sahd argues he was the prevailing party on his counterclaims, which were independent of Rotalo's claims. Thus, he contends, the trial court erred by declining to award him attorney fees.

**¶21** "The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it." *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430 (App. 1994).

**¶22**        Relying on *Ocean W. Contractors, Inc. v. Halec Constr. Co.*, 123 Ariz. 470 (1979) and various cases from other jurisdictions, Sahd asserts the court erred in applying the "net winner" rule. *See Ayala v. Olaiz*, 161 Ariz. 129, 131 (App. 1989) ("In cases involving various competing claims, counterclaims and setoffs all tried together, the successful party is the net winner."). However, no Arizona authority holds that any particular method must be applied in determining the prevailing party. Although an award of money is "an important item to consider," the fact that a party does not recover the full measure of relief it requests does not mean that it may not be considered the successful party. *See Ocean W.*, 123 Ariz. at 473. Moreover, a court "must assess the overall outcome of the case" to determine if a party has prevailed in a lawsuit. *Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 134, ¶ 35 (App. 2012). Thus, depending on the circumstances of each case, the court may apply a net winner determination, as used in *Ayala*, or the court may assess the parties' respective percentage of success, or consider the totality of the litigation. *See Schwartz v. Farmers Ins. Co.*, 166 Ariz. 33, 38 (App. 1990) (recognizing the trial court possesses discretion to determine the successful party in multiple-party litigation and in cases involving multiple parties or multiple claims).

**¶23**        Here, in awarding Rotalo her attorney fees and costs, the trial court determined Rotalo was the prevailing party because she was the net winner. Although Rotalo lost on her conversion claim, she won on her promissory note claims, and even though Sahd won on his claim for the rings, the jury did not award him damages on his conversion claim. The trial court also considered the relevant factors in awarding fees in litigation arising out of contract under A.R.S. § 12-341.01(A). *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985).

**¶24**        Given Rotalo's success in prevailing on her promissory note claims and because a reasonable basis exists for the court's determination that Rotalo was the successful party, we find no abuse of discretion.

## IV.    Attorney Fees on Appeal

**¶25**        Both parties request attorney fees and costs on appeal under ARCAP 21 and A.R.S. § 12-341, -341.01, and -342. Because Sahd is not the successful party on appeal, we decline to award him fees or costs. In the exercise of our discretion, and based upon our determinations above, because Rotalo is the successful party on appeal, we award her a reasonable amount of attorney fees and costs incurred on appeal upon compliance with ARCAP 21. *See* § 12-341.01(A) (providing a court with discretion to award

reasonable attorney fees to a prevailing party "[i]n any contested action arising out of a contract.").

## CONCLUSION

**¶26** Because the trial court did not err, we affirm its orders denying Sahd's post-trial motions.



AMY M. WOOD • Clerk of the Court
FILED: AA