379 P.2d 116

**George WISE, Appellant,**

v.

**Armando MONTEROS, Appellee.**

No. 6920.

Supreme Court of Arizona.

In Division.

Feb. 27, 1963.

Nasib Karam, Nogales, for appellant.

Bird & Haythornewhite, Nogales, for appellee.

BERNSTEIN, Chief Justice.

Appellant was defendant in an assault and battery action. Plaintiff received a verdict and judgment for $8,000, from which defendant appeals and asks for a new trial.

Plaintiff was a night clerk in the Montezuma Hotel in Nogales and defendant was a regular customer at the hotel. They had been quarreling for some time and the testimony is conflicting as to the background of the animosity. Defendant claimed that plaintiff would call him at odd hours of the night to awaken him, but plaintiff claimed that defendant was angry because plaintiff had once forgotten to call him in the morning. There is agreement that plaintiff called

defendant's room on the night of the fight. Plaintiff claims the call was a mistake and defendant thought it was on purpose. In any event, defendant left his room and went downstairs to fight with plaintiff.

Although plaintiff's special damages were approximately $400 the jury fixed actual damages at $8,000 and gave no punitive damages. There was testimony from which the jury could have found that the plaintiff had pain and had suffered and testimony from which the jury could have found that there was some permanent injury.

At the trial, a doctor to whom plaintiff had gone six or seven weeks after the incident testified to plaintiff's statements as to the manner in which the injuries occurred. This testimony was objected to by defendant.

Defendant complains that the ratio of the amount of the verdict to the actual damages is such as to show that the verdict was the result of passion and prejudice on the part of the jury. The amount of damages for personal injuries is a question peculiarly within the province of the jury, Phillips v. Stillwell, 55 Ariz. 147, 99 P.2d 104. There was evidence in this case from which the jury could have awarded damages for pain and suffering. The testimony shows that during the fight the plaintiff was hit in the eye and kicked in the scrotum. There was testimony from which the jury could have found that the plaintiff had suffered some permanent injuries [1] and we cannot say that the amount of the verdict was excessive as to show that the jury arrived at it as a result of passion and prejudice.

Defendant also complains that certain testimony by Doctor Carlson was improperly admitted. The testimony was:

"Q. What was the nature of your examination at that time?

"A. Mr. Monteros presented himself in my office on that date with two major complaints. He alleged that he was assaulted and that he had suffered injuries to his eye, and he also com-

---

1. Plaintiff's doctor testified as follows:
   "Q. I think you more or less testified as to this, but let me reiterate, if I may. Have you an opinion based upon your early examinations and treatment and your recent examination and study of his case, whether or not these injuries that you described are of a temporary or permanent nature?
   "A. Well, based upon those, the major portion of his injuries, of course, were temporary, but with the following permanent defects: (1) A visual acuity of 20 over 50, which probably will not improve; a photo-sensitivity which, after nearly five years of time, persists to a varying degree, probably will be with him always; a thickening and inflamed chronic swelling in the scrotum—that which has already taken place certainly will be permanent, and in that situation the likelihood of further inflammatory processes is very great."

plained of pain in his scrotum, and at the time I first saw him he had a typical black eye, right eye, and there had been evidence of struggle, injury to his face, his nose was swollen and excoriated, the skin was roughed up over the bridge of the nose, and right eye, as I say, was black from a hemorrhage around the outside of the eye. The patient came in wearing dark glasses and complaining bitterly that the light hurt his eye, and he told me that following the injury he had been under the care of another physician in this community, but that he had been released some time previously from this physician's care and had come to me because the pain in his eye had continued to occur, as had the pain in the scrotum, and for the previous four or five nights he had not slept, and he stated at that time that his vision was being interfered with.

"MR. KARAM: I object to any testimony given by the plaintiff to the doctor, or anything said by him. I think the doctor should testify what the examination was, and what he found, and the treatment given, but not self-serving declarations made by the plaintiff.

"MR. HAYTHORNEWHITE: I think the doctor should be permitted to testify to any statements made by the plaintiff with reference to the nature of his complaints that the doctor based his examination on and his subsequent findings.

"THE COURT: Yes; I will overrule the objection.

"A. The history in these cases is of extreme importance, and a history, for example, as to whether he had loss of sight and whether his vision was impaired after the accident are the only ways that a physician can deduce what had happened in an ocular case, and in this case Mr. Nunez complained of a red haze in his vision."

■ Defendant claims that the testimony of the doctor as to statements made by the plaintiff are hearsay. There is no doubt that testimony by the doctor to statements made by plaintiff as to how the injuries were received are hearsay and are not admissible to prove the truth of the statements. But here the statements were recounted by the doctor so that he could explain the basis on which he had an opinion of the condition and prognosis of the plaintiff. When used for such a purpose, a doctor may testify to the history given him by an injured plaintiff as a non-hearsay use.

In Illinois Bankers Life Ass'n. v. Theodore, 47 Ariz. 314, 318–319, 55 P.2d 806, 808, this court said:

"Plaintiff should have first developed the history of the case *as given to the*

*two witnesses,* [doctors] together with the objective symptoms which they found on examining deceased, and their treatment of him, and after that put the hypothetical question." (Emphasis added.)

See, also, Gilbert v. Quinet, 91 Ariz. 29, 32, 369 P.2d 267, 269, footnote 1; Udall on Evidence, Sec. 24; and see cases collected in 67 A.L.R. 10, 80 A.L.R. 1527 and 130 A.L.R. 977.

Defendant cites us to Middleton v. Green, 35 Ariz. 205, 211, 276 P. 322, 324, particularly the following quotation:

"Under the authorities the opinion or conclusion of an expert may not be received in evidence if it is based, even in part, on the statements outside the courtroom, since in that event it would depend upon hearsay. Hintz v. Wagner, 25 N.D. 110, 140 N.W. 729; Security Benefit Ass'n. v. Small [34 Ariz. 458], 272 P. 647. *And this is true even though the statements are the history of the case and made by the plaintiff,* though 'a physician may properly testify to statements made by the patient relating to his condition at the time' of his examination. Hutchinson v. Missouri Pac. Ry. Co. (Mo.App.) 288 S.W. 91." (Emphasis added.)

The underlined part of the quotation was dictum. We are of the opinion that the rule announced in Illinois Bankers Life Ass'n. v. Theodore, supra, and Gilbert v. Quinet, supra, is correct.

Affirmed.

UDALL, V. C. J., and JENNINGS, J., concurring.