415 P.2d 424

**Rene W. LARRIVA dba Appliance Furniture Sales, Monroe C. Hayes dba Hayes Bros. Cooling & Sheet Metal Co., Appellants,**

v.

**Ronald L. WIDMER and Blanche M. Widmer, his wife, Appellees.**

No. 7689.

Supreme Court of Arizona.

In Banc.

June 8, 1966.

Kramer, Roche, Burch & Streich, Mark I. Harrison, Frank Haze Burch, Phoenix, for appellant Monroe C. Hayes dba Hayes Bros. Cooling & Sheet Metal Co.

Beer & Polley, Olgerd W. Kalyna, Phoenix, for appellant Rene W. Larriva dba Appliance Furniture Sales.

Randolph, Smith & Warner, Lawrence B. Smith, Phoenix, for appellees.

McFARLAND, Justice:

Appellants, hereinafter designated defendants, appeal from a $65,000 judgment taken against them by appellees, hereinafter designated plaintiffs.

On April 13, 1959, plaintiffs Ronald L. Widmer, hereinafter referred to as Ronald, and Blanche Widmer, his wife, hereinafter referred to as Blanche, purchased a two-speed evaporative cooler from Rene W. Larriva, dba Appliance Furniture Sales, one of defendants. One week later, the cooler was installed by Monroe Hayes, dba Hayes Bros. Cooling & Sheet Metal Co. In mid-June of that same year, Ronald received a slight shock while adjusting an outside water spigot at his home. He told no one of the incident. On June 26, while taking a shower in the bath off the master bedroom, Ronald received a sharp shock when he touched the water faucets. Although he did not tell Blanche not to use the shower, he did inform her that she should call the homebuilder and find out what was wrong.

The next day Blanche went to her neighbor's house, and placed a call to the homebuilder. Since it was Saturday, no one answered the telephone. The neighbor suggested that, inasmuch as the repairman was coming to the neighbor's home to fix a stove, she would send him over to the Widmer home when he arrived. The repairman did not come to the Widmer home until eleven days had elapsed from the time Ronald had received the shock in the shower. In fact, the repairman arrived on the same day that Blanche received the shock which gave rise to this action. On July 7, Blanche who was seven months pregnant, stepped into the shower and turned on the faucets. She received an electrical shock throughout her body. In the process of freeing her grip from the faucets, she fell to her knees. After this traumatic experience, she no longer felt the movements of fetal life, which she had experienced for several months prior to receiving the shock. On August 3, she gave birth to a stillborn baby girl.

Two causes of action were sent to the jury under a general verdict. One was for the pain and suffering of Blanche, and for special damages incurred as a result of the injury which she sustained. The other count was for wrongful death of Baby Girl Widmer. The jury decided in favor of plaintiffs,[1] and thereafter this appeal was filed.

We shall first consider the alleged error in regard to the count for damages for pain and suffering by Blanche and the special damages to her resulting from the injury which she sustained.

Defendants assert that the hypothetical questions propounded to Dr. Frank Mann, the pathologist who performed the autopsy on Baby Girl Widmer, and Dr. Robert L. Fox, Blanche's physician, were inade-

---

1. "We, the Jury, duly empaneled and sworn in the above entitled action, upon our oaths, do find for the plaintiffs, the Widmers, and against the defendants Larriva and Hayes on the plaintiffs' complaint, and do assess the plaintiffs' dam- ages against these defendants in the sum of $65,000.00 and do further find in favor of Larriva and against Hayes on Larriva's cross-claim, finding the same amount."

quate, and that the opinion answers given thereto constitute reversible error. Defendants assert that, inasmuch as causes of this nature must depend wholly upon the medical testimony of expert witnesses, examination by hypothetical questions must be of the strictest nature. They urge that there were insufficient facts in the record upon which the questions could be predicated—namely, there was no evidence of the severity of shock received by Blanche, and the relationship of such shock to the death of the fetus.

Although defendants are correct in their assertion that cases of this nature depend heavily upon expert medical testimony, we cannot agree that the hypothetical questions asked of the expert medical witnesses and the resulting answers thereto constitute error.

Wigmore's discussion of the theory of the use of hypothetical questions succinctly states the problem:

"The key to the situation, in short, is that there may be two distinct subjects of testimony,—premises, and inferences or conclusions; that the latter involves necessarily a consideration of the former; and that the tribunal must be furnished with the means of rejecting the latter if upon consultation they determine to reject the former, i. e. of distinguishing conclusions properly founded from conclusions improperly founded." 2 Wigmore, Evidence, (3d ed. 1940) 793.

Thus, in order to have the expert testify as to his opinion, the jury must know the facts upon which it is grounded. Defendants' objection goes to the issue of whether there were sufficient facts presented in framing the hypothetical question. In Decker v. Ramenofsky, 91 Ariz. 97, 370 P.2d 258, we quoted Wigmore at length in declaring an objection similar to the one in the instant case to be without merit. We stated that the proponent of the hypothetical question need not state all the facts which he alleges in his case. The questioner has the right to solicit an opinion based upon the combination of facts pre-

sented to the expert medical witness, but "the trial court must use its discretion to prevent the abuse of the hypothetical question, and should interfere to prevent questions framed in such a way or using only such facts as are either intended or likely to mislead the jury." Decker v. Ramenofsky, supra.

In the instant case, plaintiffs presented evidence of the facts surrounding the alleged injury, the testimony of a commercial engineer who practiced electrical engineering, a house plumbing expert, the foreman of the construction crew that had built the house in question, and who had been an electrician since 1938, and, finally, the testimony of the doctors themselves. At this juncture, plaintiffs' counsel chose to hypothecate his hypotheticals. The questions were carefully framed, based upon plaintiffs' theory of the case, and rested upon facts which were reasonably justified by the evidence presented. Helman v. Sacred Heart Hospital, 62 Wash.2d 136, 381 P.2d 605, 96 A.L.R.2d 1193; Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1. We cannot find merit to defendants' contention.

■ In essence, defendants' objection goes to the ultimate issue itself—did Blanche receive a sufficient shock to cause the fetal death? Defendants want the ultimate issue of fact to be decided by the very premises which serve as the basis for the opinion evidence. It lies within the jury's discretion to give credence to the testimony of the doctors, and it is for them to believe or not to believe the inferences drawn from the premises predicated. As Wigmore has stated:

" * * * the jury may still reject his testimony and accept his opponent's, and no legal power, not even the judge's order, can compel them to accept the witness' statement against their will. That there is no hidden danger to the jury system, and no need of invoking rhetoric in its aid, will be seen when it is remembered that the logical necessity for hypothetical questions is exactly the

4

same for a judge sitting without a jury. Whatever the tribunal, it must separate premises from conclusions, and it must wait till the end of the trial and all of the evidence on both sides is in, before it determines what premises are proved and therefore which opinions have a factual basis." 2 Wigmore, Evidence (3d ed. 1940) 795.

It is for the jury to determine the truth or falsity of the facts upon which the hypothetical question is based. We find that the hypothetical questions were based upon proper predicates, which were subject to the sound discretion of the trial court. The court did not abuse this discretion.

■ Defendants contend the court erred in giving plaintiffs' requested instruction No. 10, in regard to contributory negligence, which referred to negligence on the part of plaintiffs, it being the contention of defendants that this instruction required contributory negligence on the part of both of plaintiffs to bar recovery for damages for personal injury sustained by the other. We cannot agree with defendants' contention that the giving of this instruction misled the jury. The giving of the instruction as a whole told the jury that if either of the plaintiffs were negligent in proximately causing the injury, then neither plaintiff could recover. Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444. In Jost v. Ross, 82 Ariz. 245, 311 P.2d 840, we stated:

" * * * However, it has been the rule of long standing in this jurisdiction that

" ' * * * instructions must be considered as a whole, and that a case will not be reversed when the alleged error is predicated on an isolated part of the instructions, unless it appears that the questioned instruction, when considered in connection with all the instructions in the case, was calculated to mislead the jury as to the law.'

"Southern Arizona F. Lines v. Jackson, 48 Ariz. 509, 63 P.2d 193; City of Phoenix v. Harlan, 75 Ariz. 290, 255 P.2d 609." 82 Ariz. at 246, 311 P.2d at 841.

We further stated, in Coyner Crop Dusters v. Marsh, 91 Ariz. 371, 372 P.2d 708:

" * * * We have often stated that instructions must be considered as a whole, Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674 (1956), and that if an instruction is incomplete, it is not reversible error if the proper qualifications are given in some other portion of the instructions, Humphrey v. Atchison, T. & S.F. Ry. Co., 50 Ariz. 167, 70 P.2d 319 (1937). The test is whether the jury would be misled as to the proper rule of law, Jost v. Ross, 82 Ariz. 245, 311 P.2d 840 (1957). * * *" 91 Ariz. at 376, 372 P.2d at 711.

See also Layton v. Rocha, supra; Lutz v. Faith, 95 Ariz. 40, 386 P.2d 85.

Reading the instructions as a whole— " * * * we do not hesitate to state that, as a whole, they correctly state the law of the case." Jost v. Ross, 82 Ariz. at page 247, 311 P.2d at page 842.

■ Defendants contend the court erred in giving plaintiffs' requested instruction No. 12, in which the court instructed the jury on the question of negligence. Defendants contend that this instruction violates two constitutional provisions—(1) Art. 18, § 5, which states that the question of contributory negligence shall always be a question of fact for the jury; (2) Art. 6, § 27, as amended 1960, which states that the judge shall not comment on the evidence, but shall declare the law applicable to the case. Defendants assert that the instruction, as given, emasculated the contributory negligence provision for it in effect allowed the plaintiffs to defend against such a defense by merely stating, "I forgot," and thus the instruction is in direct contradiction of our decision in Layton v. Rocha, supra. Defendants further assert that if the "forgetfulness" instruction can be given, and they state unequivocally that it should not be given, then the jury should be instructed that the forgetfulness must be induced by some sudden and adequate disturbing cause, and the nature of the danger

must be considered in determining whether the forgetfulness is excusable. Ronald not having received a serious injury from a shock, it is understandable that Blanche forgot about the incident when she started to take a shower. The injury which Ronald received was not in the "dangerous-situation" category.

We cannot agree with the defendants' contention that the instruction in question emasculates the Arizona constitutional provision on contributory negligence. The instruction does not comment on the evidence, nor does it take the question of contributory negligence from the jury, the trier of fact. The instruction informs the jury that "forgetfulness" of a known danger, or what should be understood as a dangerous condition, does not necessarily mean that the person who forgets is contributorily negligent. The jury could decide if the forgetfulness of the injured party was the conduct of an ordinarily prudent person based upon the circumstances surrounding the time of forgetfulness. In other words, based upon the circumstances presented in the evidence, the jury could decide if the forgetfulness of the injured party showed a lack of ordinary care. Harbourn v. Katz Drug Co., (Mo.) 318 S.W.2d 226, 74 A.L.R.2d 938; Lazzarotto v. Atchison, Topeka, and Santa Fe Ry. Co., 157 Cal.App.2d 455, 321 P.2d 29; Austin v. Riverside Portland Cement Co., 44 Cal.2d 225, 282 P.2d 69. If anything, the instruction is favorable to defendants for the reason that it refers to an incident which could hardly be understood to be dangerous in that no serious injury had resulted therefrom.

The next error asserted by defendants was in connection with the admission of evidence, the instruction of the court and the submission of the question of damages for the wrongful death of Baby Girl Widmer under the wrongful death statute. A.R.S. § 12–611.

It is the contention of plaintiffs that since the other count is free of error and since the case was submitted on a general verdict the judgment should be affirmed.

The court, in making its decision, in the submission of the case in a general verdict, stated:

"THE COURT: The record may show that the matters of the form of verdict have been discussed, particularly in relation to whether there should be a separate form of verdict on the death case, and a separate form of verdict or a separate recovery as to damages sustained by the Widmers independent of the death case. *The defendants expressed themselves forcefully in favor of a single form of verdict for all damages.* It is the opinion of the Court that the Larriva over against Hayes and the rights thereto have been established in the event there is liability. Therefore, there will be but two forms of verdict; one, for recovery in favor of the plaintiffs against the defendants with a judgment over or a verdict over for Larriva against Hayes in the same amount, and the other a form of verdict for the defendants denying recovery.

"Are there any exceptions to the announcements of the Court in that respect?" [Emphasis supplied]

After which statement by the court, the only objection made was made by counsel for the defendant Monroe C. Hayes, in regard to a denial of a directed verdict in behalf of defendant Hayes, as against the cross-claim of codefendant Larriva. Counsel for plaintiffs then stated:

"MR. SMITH: I have one matter, may it please the Court—the plaintiffs would object and take exception to the forms of the verdict inasmuch as there are two now, two separate claims remaining, one essentially for the personal injuries of Mrs. Blanche Widmer, a plaintiff herein, and the other claim is separate and distinct [sic] claim for wrongful death arising under and by virtue of the statute and is brought on behalf of both Mr. and Mrs. Widmer; and while any recovery would be split evenly by them, such recovery would be separate property, and without some showing that this sepa-

rate property, in the event one of the parties died without a showing that it would go to the other party, would leave the question of what amount in the judgment, if any, or verdict would go to him and would, because of any claim of relatives or surviving heirs of either party should they become deceased, it might create substantial problems, and therefore plaintiffs believe as a matter of law they would be entitled to two verdicts, one for Mrs. Widmer's injuries, one for the wrongful death claim."

The record in the instant case shows that: (1) Plaintiffs sought recovery under two counts; (2) Plaintiffs specifically requested separate verdicts to be submitted to the jury in regard to recovery of damages under each count; (3) Defendants requested that the question of damages under both counts be submitted in a general verdict; (4) The court overruled plaintiffs' request, granted defendants' request and submitted the questions under a general verdict; (5) The count in regard to damages to Blanche Widmer is free of prejudicial error.

We are therefore confronted with the question of whether this court should consider the assignments of error in the other count. In the case of Berger v. Southern Pacific Company, 144 Cal.App.2d 1, 300 P.2d 170, 60 A.L.R.2d 1104, the court held:

"There were two forms of verdict given to the jury for its convenience, one being in favor of Pullman and Zeno and the other, which was adopted by the jury, reading as follows: 'We the jury in the above-entitled cause find a verdict in favor of the plaintiff, Edith Berger, and against the defendants Pullman Company, a corporation, and J. V. Zeno, Jr., and we assess damages in the sum of (blank) Dollars.' There is thus no way to ascertain whether the jury based its verdict on the first count or the second count or on both. However, the rule is that if the verdict in favor of a plaintiff is general in form and there is one count which is supported by the evidence and which is free from error, such verdict will be upheld. 2 Cal.Jur. p. 1029; 4 Cal.Jur.2d 509; 24 Cal.Jur. p. 885." 300 P.2d at 172.

In the case of Keeler v. General Products, 137 Conn. 247, 75 A.2d 486, the court said:

"* * * '[W]here a complaint is divided into counts, and a general verdict is rendered, if any of the counts are good, it will be presumed that the damages were assessed as to that count, and the verdict will be sustained.' Ziman v. Whitley, 110 Conn. 108, 112, 147 A. 370, 372; Knight Realty Co. v. Caserta, 126 Conn. 162, 166, 10 A.2d 597." 75 A.2d at 488.

Defendants call our attention to other cases holding that if error was committed on any one issue submitted to the jury— either in the admission of evidence or in the charge of the court—the verdict cannot be upheld. They cite the case of Southern Casualty Co. v. Hughes, 33 Ariz. 206, 263 P. 584 (1928), which was not a case alleging two different counts but one which involved a question of damages which was submitted to the jury under two different theories— one of which was invalid and submitted under an erroneous instruction, and the other was a valid theory and under a proper instruction. This court, under those circumstances, held that it had no way of knowing whether the jury found for the plaintiff on the basis of the erroneous instruction or upon the other valid theory. However, the facts in the instant case are altogether different than in the Southern Casualty case. In the instant case there are two separate and distinct counts. In Elliott v. Landon, 89 Ariz. 355, 362 P.2d 733, the court stated:

"* * * Likewise, in considering an appeal from a judgment based upon a general verdict it must be assumed that the jury passed upon every material issue of fact presented to them, and that the findings thereon were such as to support the verdict. Moreover, 'when we do not know on what basis the jury reached its verdict, if there is any evidence to support a theory which will sustain same

it must be affirmed on appeal.' Citizens Utilities Co. v. Firemen's Ins. Co., 73 Ariz. 299, 240 P.2d 869, 871. Appellant's contention that the jury *might have* found for defendant on the ground that there was no injury is not tenable. There is substantial evidence from which the jury could find that either the elements of defendant's negligence or that of proximate cause was not established by a preponderance of the evidence." 89 Ariz. at 357, 362 P.2d at 735.

There is an added factor in the instant case other than the mere submission of a general verdict under two different counts—namely, the submission of the general verdict at the request of defendants. As has been pointed out, in Berger v. Southern Pacific Company, supra, there is no way to ascertain whether the jury based its verdict on the first or second count, or on both. As a matter of fact plaintiffs sued for $75,000, which was in excess of the verdict of $65,000, for the pain, suffering, care, and treatment of Blanche M. Widmer, and only $25,000 damages for the death of Baby Girl Widmer. The actions of defendants in getting the court to submit this case on a general verdict deprives the court on appeal of knowing whether the jury based its verdict on any part of the second count, or, if so, how much. It also deprived the plaintiffs from knowing, and, if based partly on the count for damages for the death of Baby Girl Widmer, accepting a verdict on the principal count on which they sued in the event the court found error in its instruction. Had the jury found in the full amount sued for on the second count in the sum of $25,-000, they would have still had a verdict of $40,000 on the other, and might have well accepted that verdict rather than go through another expensive trial.

■ We therefore hold that, as in the instant case where there are two counts for damages and a general verdict is submitted at the request of defendants, and the other count will support the verdict and is free of prejudicial error, a verdict for plaintiffs will be upheld. For these reasons we do not pass upon the questions submitted under the count for damages for the death of Baby Girl Widmer.

■■ Defendants also contend that the amount of the verdict is excessive. The law is well settled in Arizona that the amount of an award for damages is a question peculiarly within the province of the jury, and such award will not be overturned or tampered with unless the verdict was the result of passion and prejudice. Wise v. Monteros, 93 Ariz. 124, 379 P.2d 116, Young Candy & Tobacco Company v. Montoya, 91 Ariz. 363, 372 P.2d 703, Keen v. Clarkson, 56 Ariz. 437, 108 P.2d 573. As we stated in Young Candy & Tobacco Company v. Montoya, supra:

"* * * The question is whether the verdict rendered here is so manifestly unfair, unreasonable and outrageous as to shock the conscience of the Court. Our answer to this query is in the negative." 91 Ariz. at 370, 372 P.2d at 707.

We find that the verdict does not "shock" our conscience.

There was sufficient evidence adduced whereby the jury could bring in a substantial verdict. Blanche had lost her child. There was evidence introduced to show that she probably knew that her baby was dead while she carried it in her womb for a full month. Blanche suffered greatly after the stillbirth, became distraught, and spent two days in a mental hospital. Her husband and her physician testified as to her extreme nervousness after the tragedy. Blanche alleged pain and suffering as one of her injuries, and for such injury the jury could award damages. Wise v. Monteros, supra. The fact that the very nature of the cause of action itself is of the type to evoke sympathy is not, alone, enough to show that the verdict was the result of passion and prejudice.

Judgment affirmed.

STRUCKMEYER, Jr., C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.