NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARVIN J. SCHENK, et al.,
*Plaintiffs/Appellants-Cross Appellees,*

*v.*

VICTOR S. CASEBOLT II, et al.,
*Defendants/Appellees-Cross Appellants.*

No. 1 CA-CV 18-0753

FILED 4-14-2020

Appeal from the Superior Court in Maricopa County
No. CV2013-002402
The Honorable Connie Contes, Judge

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART**

COUNSEL

Broening Oberg Woods & Wilson, P.C., Phoenix
By Robert T. Sullivan, Jathan P. McLaughlin
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Sacks Tierney, P.A., Scottsdale
By Michael L. Kitchen
*Counsel for Defendants/Appellees/Cross-Appellants Victor S. Casebolt II and
Amy J. Strack*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Diane M. Johnsen[1] joined.

---

**T H U M M A**, Judge:

**¶1**          This appeal involves a claim and counterclaim for breach of a written contract involving the sale of Marvin J. Schenk's law practice.

**¶2**          Plaintiffs Marvin J. and Kathryn L. Schenk, husband and wife (collectively Schenk) filed this case in 2013. By the end of that year, Schenk was granted summary judgment on Schenk's claim that defendants Victor S. Casebolt and Amy J. Strack, husband and wife (collectively Casebolt)[2] materially breached the parties' Office Sharing and Practice Purchase Agreement (PPA) by failing to timely make required payments. The superior court awarded Schenk liquidated amounts of more than $200,000 in damages and $12,000 in attorneys' fees and costs, with interest accruing until paid.

**¶3**          Years of motion practice then followed. Finally, in May 2018, a jury found Schenk had breached the contractual duty of good faith and fair dealing implied in the PPA and awarded Casebolt $275,000 in damages. The court then awarded Casebolt more than $86,000 in fees and costs, with interest accruing from the entry of the October 2018 final judgment until paid.

---

[1] Judge Johnsen was a sitting member of this court when the matter was assigned to this panel of the court. She retired effective February 28, 2020. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Johnsen as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during her term in office.

[2] Although they had signed the PPA, Kathryn L. Schenk and Amy J. Strack were named only for community property purposes; neither was alleged to have committed any act giving rise to a claim.

**¶4** On appeal, Schenk challenges the denial of his motion for judgment as a matter of law on Casebolt's counterclaim, arguing Casebolt was not a party to the PPA (meaning Schenk owed him no duty of good faith and fair dealing) and that Casebolt failed to show damages. Schenk also argues evidence of the superior court's pretrial rulings should have been admitted at trial and that the court erred in awarding Casebolt attorneys' fees. Casebolt's cross-appeal does not challenge the 2014 entry of summary judgment for Schenk but, instead, argues Casebolt is entitled to credits and offsets and that he should have been awarded an additional $188,000 in fees and costs.

**¶5** Affirming the liability and damages awards, the court vacates the attorneys' fees and costs awards and remands for the superior court to address which party (if any) is the prevailing party and, after that determination, make any awards of fees and costs that may be appropriate. The final judgment issued on remand also should account for any credits supported by the record and state a net amount of damages owed after accounting for credits and offsets.

## FACTS AND PROCEDURAL HISTORY

**¶6** In 2006, Casebolt and Sanford J. Germaine were practicing law as Casebolt and Germaine. Schenk was a solo practitioner focusing on collections, as he had for nearly 40 years. The three agreed that Schenk would join the firm to create Casebolt, Germaine & Schenk, PLC (the Firm). They also agreed that, upon Schenk's retirement, the Firm would purchase Schenk's collections practice for a specified price. In March 2006, they memorialized their agreement in the written PPA, with Casebolt and Germaine also agreeing to personally guarantee the amounts owed Schenk. Shortly before entering the PPA, Casebolt and Germaine (but not Schenk) signed a written Operating Agreement of Casebolt, Germaine & Schenk, PLC, governing various aspects of the Firm's financing and management.

**¶7** The PPA required Schenk to "use good faith reasonable efforts to integrate the Firm into" his collections practice. The PPA stated Schenk would retire no later than March 2009, and that the Firm would pay $500,000 for his practice, to be paid in installments, starting with a $100,000 payment in April 2006 and "equal quarterly payments" over the next four years, at seven percent interest, simple, per year from the date of his retirement until paid.

¶8 Schenk practiced at the Firm until he retired in March 2009. Casebolt and Germaine then took over Schenk's practice and began making timely payments to him under the PPA.

¶9 Although Schenk and Germaine remained on good working terms, the relationship between Schenk and Casebolt soured. Casebolt later testified that Schenk did "[l]iterally nothing" to integrate him into the collections practice, and both testified that they would not acknowledge each other in the hallways.

¶10 In mid-2011, the tension between Schenk and Casebolt boiled over when Schenk had a meeting with Germaine to introduce a potential client. After the meeting, Germaine emailed Casebolt that Schenk had "some stipulations before [he] would consider referring the business." Casebolt later testified that Schenk "was insisting that . . . the new potential client['s work] only go to Mr. Germaine and not go to me at all." A few days later, Germaine gave Casebolt a written buy/sell offer for Casebolt's interest in the collections practice and other assets. When no agreement was reached, Germaine left the Firm later in the summer of 2011. Soon after Germaine left, Casebolt sent Schenk a letter stating the payments under the PPA would cease. Casebolt's letter claimed Schenk had "breached [his] express and implied obligations to [Casebolt] under the" PPA by making his client referral to Germaine with stipulations.

¶11 In March 2013, Schenk sued Casebolt, Germaine and the Firm, alleging breach of the express terms of the PPA by failing to make required payments since September 1, 2011. Casebolt and the Firm answered and filed counterclaims alleging (1) breach of the express terms of the PPA; (2) breach of the contractual covenant of good faith and fair dealing implied in the PPA; (3) interference with the operating agreement; and (4) aiding and abetting a breach of fiduciary duty.[3]

¶12 Schenk moved for summary judgment on his claim against Casebolt, seeking payment of $183,405.23 in principal, $17,596.48 in interest and attorneys' fees and costs to be determined. In opposing the motion, Casebolt argued that Schenk's material breaches of the PPA, including the

---

[3] Germaine was served but did not file an answer and, other than testifying at trial, did not take an active role in the case, was not granted any relief and is not a party to this appeal. The Firm was joined, appeared through counsel, and asserted counterclaims, but was not granted any relief and is not a party to this appeal.

mid-2011 referral with stipulations, suspended the payment obligations to Schenk or, at very least, created an issue of material fact to be decided at trial, thereby preventing entry of summary judgment. In reply, Schenk argued Casebolt cited no express term of the PPA that Schenk allegedly breached and that "Schenk did not violate the duty of good faith inherent in the" PPA. Agreeing that Casebolt cited no express provision of the PPA that Schenk breached, the superior court found Casebolt breached the PPA payment obligation and granted Schenk's motion for summary judgment.

¶13　　　　After further briefing, in March 2014, the superior court issued an order awarding Schenk $201,001.71 ($183,405.23 in principal and $17,596.48 in pre-judgment interest), $11,560.50 in attorneys' fees and $499.08 in costs against Casebolt, "subject to offset for any payments received from other parties." Although first designating the order a final judgment, Ariz. R. Civ. P. 54(b) (2020),[4] the court later ruled it an interlocutory, non-appealable order pending resolution of Casebolt's counterclaims.

¶14　　　　In 2015, Schenk sought summary judgment on Casebolt's counterclaims. As relevant here, Schenk argued Casebolt cited no express provision of the PPA that Schenk allegedly breached and that his referral of the client to Germaine after he retired could not constitute a breach of the implied covenant of good faith and fair dealing. Casebolt, in response, focused on the implied covenant, arguing that Schenk's post-retirement referral with stipulations "took steps to destroy the firm and eliminate any benefit from the" PPA, meaning "[a]t minimum, questions of fact exist sufficient to demand a trial."

¶15　　　　After briefing, the superior court granted Schenk's motion for summary judgment on all counterclaims except the good faith and fair dealing counterclaim, explaining "that a party may breach the implied covenant of good faith and fair dealing by exercising express discretion in a way inconsistent with a party's reasonable expectation." Accordingly, the court found that "[w]hether, under these circumstances, Plaintiff Marvin J. Schenk breached the implied covenant presents a question of fact [for] the jury."

¶16　　　　In 2018, as trial on the good faith and fair dealing counterclaim approached, the superior court granted Casebolt's motion *in limine* to preclude admission of the court's rulings on Schenk's motion for

---

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

summary judgment on Casebolt's other counterclaims. At the four-day trial, Schenk, Casebolt, Germaine, a representative of the potential client Schenk referred and two experts testified. Casebolt's trial theme was that Schenk's post-retirement referral with stipulations in mid-2011 caused the Firm to break up, that such conduct violated the implied covenant of good faith and fair dealing and that, as a result, Casebolt was entitled to half the value of the collections practice as damages.

¶17        The trial evidence on damages included expert testimony valuing the collections practice in its entirety at $722,000 and evidence that Germaine's buy/sell offer in mid-2011 was for $550,000. After the close of the evidence, Schenk moved for judgment as a matter of law, which the court denied. After deliberation, the jury found for Casebolt and awarded him $275,000 in damages.

¶18        After further motion practice, including Schenk's unsuccessful renewed motion for judgment as a matter of law and motion for a new trial, the court entered final judgment in October 2018. The final judgment listed the specific amount awarded to Casebolt, but did not list the specific amount awarded to Schenk, instead simply referencing the 2014 ruling in favor of Schenk. The following table reflects the specific awards made in the 2014 ruling and the 2018 final judgment:

| Party | Damages | Fees | Costs | Total |
|-------|---------|------|-------|-------|
| Schenk (against Casebolt) | $201,001.71 | $11,560.50 | $499.08 | $213,061.29 |
| Casebolt (against Schenk) | $275,000.00 | $80,000.00 | $6,345.20 | $361,345.20 |

The judgment stated Casebolt was the prevailing party "at least since the" 2014 ruling and awarded Casebolt (but not Schenk) interest from the date of entry of judgment until paid. Recognizing the possibility of a net judgment, the judgment nevertheless "[d]ecline[d] to apply offsets" and did not provide a net award.

¶19        Schenk timely appealed and Casebolt cross-appealed. This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) and -2101(A)(1) (2020).

**DISCUSSION**

¶20        Schenk argues the superior court erred in denying his motion for judgment as a matter of law, erred in granting the motion *in limine* precluding evidence of the ruling rejecting three of Casebolt's counterclaims and erred in awarding Casebolt attorneys' fees. On cross-appeal, Casebolt does not challenge the 2014 order granting Schenk summary judgment on the breach of contract claim but, instead, argues the court erred by failing to apply credits and offsets to the damages awarded in the 2014 order, by refusing to eliminate the interest, attorneys' fees and costs awarded Schenk in the 2014 order, and by failing to award Casebolt more fees.

**I.      The Superior Court Did Not Err in Denying Schenk's Motion for Judgment as a Matter of Law.**

¶21        This court reviews de novo a superior court's denial of a motion for judgment as a matter of law, *Glazer v. State*, 237 Ariz. 160, 167 ¶ 29 (2015), viewing the evidence in the light most favorable to the nonmoving party, *Desert Palm Surgical Group, P.L.C. v. Petta*, 236 Ariz. 568, 578 ¶ 25 (App. 2015). A grant of judgment as a matter of law is proper "only when the facts presented in support of a claim have so little probative value that reasonable people could not find for the claimant." *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 302 ¶ 6 (App. 1999).

**A.      Casebolt Was a Party to the PPA.**

¶22        Schenk first argues he did not owe a duty of good faith and fair dealing to Casebolt because the PPA was between Schenk and the Firm, not Casebolt, and that Casebolt signed the PPA only on behalf of the Firm, not individually. Not so. The PPA lists Casebolt, individually, as a party and Casebolt signed the PPA both as a member of the Firm and individually. The face of the PPA clearly shows Casebolt, as an individual, was a party.

¶23        Along with the express terms of the PPA, Schenk's complaint avowed that Casebolt was a party to the PPA. In obtaining summary judgment on his breach of contract claim, Schenk signed a declaration stating Casebolt was a party to the PPA. Having used that declaration to win summary judgment, he cannot now claim the facts were to the contrary. *See Levine v. Haralson, Miller, Pitt, Feldman & McAnally*, P.L.C., 244 Ariz. 234, 239 ¶ 16 (App. 2018) ("'[A party] should not be permitted to 'blow hot and cold' with reference to the same transaction'") (quoting *Miles v. Franz Lumber Co.*, 14 Ariz. 455, 457 (1913)).

**¶24** Schenk's argument that Casebolt was not a party to the PPA fails. Accordingly, as a party to that contract, Schenk owed Casebolt was owed a duty of good faith and fair dealing implied in the PPA. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986) ("The law implies a covenant of good faith and fair dealing in every contract.").

**B. The Superior Court Properly Granted Casebolt's Motion *in Limine* to Preclude Evidence of its Ruling Rejecting Three of Casebolt's Counterclaims.**

**¶25** Schenk argues that the jury should have received evidence of the summary judgment in his favor on Casebolt's three other counterclaims, particularly the claim alleging breach of express terms of the PPA. Schenk contends preclusion of that evidence left "the impression with the Jury that Mr. Schenk breached an express provision of the PPA." At a hearing the day before trial, the court granted Casebolt's motion *in limine* to preclude the admission of evidence of those rulings at trial.[5] During trial, Schenk more than once sought to revisit the issue, but the court denied his requests, while also making clear that if Casebolt referred to an express breach of the PPA, he would risk opening the door to the evidence. Ultimately, the court did not allow such evidence, rulings this court reviews for an abuse of discretion. *See Bogard v. Cannon & Wendt Elec. Co., Inc.*, 221 Ariz. 325, 332 ¶ 20 (App. 2009). Schenk's arguments that these ruling were erroneous fail for several reasons.

**¶26** First, the only prejudice Schenk asserts is that Casebolt repeatedly told the jury that Schenk breached his obligation to "use good faith reasonable efforts to integrate the Firm into the Schenk Practice." Schenk cannot show he was prejudiced by any references to that term of the PPA. Schenk stipulated that the PPA was admissible, and it was admitted at trial without objection. The lawyers' opening statements both briefly referenced integration, again without objection. Both on direct and cross-examination, again without objection, Casebolt was asked about Schenk's efforts to integrate Casebolt and Germaine into the practice. On cross-examination, when asked about his mid-2011 letter to Schenk claiming breach, Casebolt testified he did not mention integration because the client referral with stipulations "was the primary obligation that I was worried

---

[5] The resulting minute entry states the court granted the motion "[f]or the reasons stated on the record." Schenk, however, did not provide a transcript of that hearing, which is presumed to support the ruling. *See Myrick v. Maloney*, 235 Ariz. 491, 495 ¶ 11 (App. 2014).

about and the one that had damaged me at that point." And Germaine testified that Schenk "in fact did integrate his practice into the" Firm.

¶27        More importantly, at trial and again without objection, Casebolt testified about what he was, and what he was not, claiming:

> Q. Okay. And your claim against Mr. Schenk is for breach of the covenant of good faith and fair dealing; is that correct?
>
> A. That's right.
>
> Q. And that's a little different than breach of contract. Do you know what the difference is?
>
> A. Yes.
>
> Q. Can you please briefly explain to the jury what your understanding of the difference is?
>
> A. Okay. A breach of contract would be a default or a breach of promises that are specifically written or expressly written in the written contract. Breach of the Covenant of Good Faith and Fair Dealing would be one party failing to act in good faith in carrying out the contract.

In closing, Casebolt did not reference the PPA's integration obligation, while Schenk argued "no one has disputed that the practice was integrated into the firm." Thus, Schenk has shown no prejudice in the court's excluding evidence of the prior rulings. *See* Ariz. R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party" and if other requirements are met).

¶28        Second, the claims on which the superior court had entered summary judgment in favor of Schenk alleged breaches of Schenk's express obligations under the PPA, not the covenant of good faith and fair dealing. The court found:

> The Court concurs with Plaintiffs that assuming the truth of these allegations there is nothing in the context of the parties' agreement that would expressly prohibit placing such a restriction on

the referral of new business. The agreement is silent on this topic and contains no provision controlling new client referrals from Plaintiff Marvin J. Schenk.

Thus, the issue resolved in Schenk's favor in the earlier motion for summary judgment was different than the implied covenant of good faith and fair dealing issue the jury was asked to decide, and did decide, at trial.

¶29        Finally, Casebolt's claimed damages were tied to the value of the collections practice, which he alleged collapsed when the Firm broke up over his dispute with Germaine as a result of Schenk's client referral "with stipulations," not due to Schenk's failure to integrate. Indeed, Casebolt testified without objection that he did not consider himself damaged by Schenk's failure to integrate:

> Q. Did you consider suing Mr. Schenk when he was not including you in the collections practice? Or were you considering maybe calling the deal off and getting your $50 thousand back?
>
> A. Well, I maybe thought about it, but I didn't do it or didn't pursue that because, again, my partner, my long-time law partner had assured me, you know, just bide your time, wait until Mr. Schenk retires. The practice would be ours. We would run it 50/50. It wouldn't be a problem. And I really hadn't been damaged at that point. And so there really, you know, would have been not a whole lot I could sue for.

¶30        For these reasons, Schenk has not shown that the superior court erred in precluding evidence of its summary judgment ruling on Casebolt's counterclaims.

## C.      The Evidence Supported the Jury's Award of Damages.

¶31        Casebolt argued at trial he was entitled to damages of half the value of the collections practice, which Casebolt argued he lost as a result of Schenk's breach of the covenant of good faith and fair dealing. On appeal, Schenk argues Casebolt failed to offer evidence to support the amount of damages the jury awarded. Damages must be proven "'with reasonable certainty.' . . . [The] evidence [must] provide some basis for estimating" the

loss. *Walter v. F.J. Simmons & Others*, 169 Ariz. 229, 236 (App. 1991) (quoting *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963)). However, once the *fact* of damage is shown, "the *amount* of an award for damages is a question peculiarly within the province of the jury." *Larriva v. Widmer*, 101 Ariz. 1, 7 (1966) (emphasis added).

**¶32** At trial, the jury heard competing evidence of the value of the collections practice. Casebolt's expert testified that the Firm's collections practice was valued at $722,000. Germaine testified that the written offer he made Casebolt in 2011 to purchase Casebolt's interest in the Firm's collection practice was based on a market value for the Firm of $550,000. Schenk's expert did not offer a competing valuation, instead criticizing the methodology of Casebolt's expert. Although Casebolt argued that he was entitled to half of the collections practice — $361,000 — the jury awarded him $275,000 in damages.

**¶33** To the extent Schenk seeks to challenge the admissibility of any evidence Casebolt offered about the value of the practice, he failed to timely object, meaning such a challenge is waived. *See* Ariz. R. Evid. 103(a). And to the extent Schenk argues the jury improperly weighed the competing evidence, this court does not reweigh evidence on appeal. *See Schoels v. Fernando*, 228 Ariz. 455, 460 ¶ 15 (App. 2011).

**¶34** To the extent Schenk argues the jury's award of damages was unsupported by the evidence, he is wrong. Similarly, the record does not support Schenk's argument that "[t]he jury appears to have latched on to the lowest number they observed." The jury heard the practice was valued at amounts ranging from essentially zero (Schenk's expert) to $722,000 (Casebolt's expert). The verdict (representing the value of Germaine's buy out offer) was well within the competing evidence provided, and there is no contention or showing that it was "the result of passion or prejudice." *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 363 ¶ 53 (2014) (citation omitted). Accordingly, reasonable admissible evidence supports the $275,000 jury verdict, meaning the superior court did not err in denying Schenk's motion for a judgment as a matter of law.[6]

---

[6] Given this conclusion, this court need not (and expressly does not) address Casebolt's contingent argument for additur, made for the first time on appeal.

**II.      Attorneys' Fees, Costs, Interest, Credits and Offsets.**

¶35      The remaining issues Schenk and Casebolt raise involve their competing fee and cost awards, credits for payments made by Germaine against the damages awarded to Schenk, interest awarded to Schenk and the failure of the final judgment to net out the amounts owed. The court addresses these interrelated issues in turn, reviewing the superior court's authority to award fees and costs de novo. *See Ironwood Commons Cmty. Homeowners Ass'n, Inc. v. Randall*, 246 Ariz. 412, 417 ¶ 20 (App. 2019).

¶36      Schenk argues the superior court erred in awarding Casebolt $80,000 in attorneys' fees. The court has already rejected Schenk's argument that he was not a party to the PPA. Schenk also argues that the fee provision in the PPA only applies to an action "to enforce any of the terms of this Agreement," and the implied covenant of good faith and fair dealing is not "an express term of the PPA." Under Arizona law, however, the implied covenant of good faith and fair dealing is "as much a part of the contract as are the express terms." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 ¶ 59 (2002). Moreover, the superior court found the fee award also was appropriate under A.R.S. § 12-341.01, a finding Schenk does not challenge on appeal. *See also American Power Prods., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 368 ¶ 14 (2017) (noting A.R.S. § 12-341.01 "applies to any 'contested action arising out of contract' to the extent it does not conflict with the contract"). Accordingly, Schenk has not shown that Casebolt failed to cite proper authority for a fee award.

¶37      Turning to a more basic issue regarding fees and costs, Casebolt argues the superior court erred in finding that Schenk was the successful or prevailing party, "at least" until the entry of the 2014 order on summary judgment, and awarding Schenk fees and costs up to that time. Classically, there is no more than one successful or prevailing party eligible for an award of fees in a given case. *See* A.R.S. § 12-341.01(A) ("the court may award the successful party reasonable attorney fees");[7] PPA § 11 (stating "a party" that prevails is entitled to recover fees from the other party); *see also Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196

---

[7] Although there may be two successful parties where a written settlement offer is rejected but the judgment obtained is more favorable, *see* A.R.S. § 12-341.01(A), nothing in the record indicates that would apply here.

Ariz. 631, 637 ¶ 22 (App. 2000) (affirming the finding "that both parties were non-prevailing parties" under contractual fee-shifting provision).

¶38 Casebolt cites *Ayala v. Olaiz*, which stated that "[i]n cases involving various competing claims, counterclaims, and setoffs all tried together, the successful party is the net winner." 161 Ariz. 129, 131 (1989). Schenk counters by citing *Schwartz v. Farmers Insurance Company of Arizona*, which stated that the superior court has

> discretion to determine who is the successful party in multiple-party litigation and in cases where there are multiple-parties as well as multiple-claims. The use of a "percentage of success factor" test to determine the relative success of the parties with regard to the various claims has been held to be appropriate, as has a "totality of the litigation" test.

166 Ariz. 33, 38 (App. 1990) (citations omitted). Given the various claims in this case, their resolution and the timing of that resolution, the superior court has discretion to employ any of these approaches to determine who (if anyone) is the successful party.

¶39 In deciding the competing claims for fees, the court should take into account that Schenk filed this case alleging breach of contract, prevailed on that claim on summary judgment and by March 2014, that claim was liquidated at $201,001.71 as of August 30, 2013. With a rough calculation of interest on that amount through May 1, 2018 — the approximate date of the jury verdict — at seven percent interest, simple, per year (the rate listed in the PPA)[8] the award approaches $270,000.

---

[8] Although Casebolt argues that Schenk should not receive interest on his award given the jury's verdict, years later, that argument misconstrues when a party is entitled to pre-judgment interest. *See Alta Vista Plaza, Ltd. v. Insulation Specialists Co.*, 186 Ariz. 81, 83 (App. 1995) (noting a party is entitled to pre-judgment interest when an amount is liquidated and demand for payment is made).

¶40        Casebolt, by contrast, received a jury verdict in May 2018 in his favor and against Schenk for $275,000 on his implied covenant of good faith and fair dealing counterclaim, slightly more than the approximate then-current award approaching $270,000 in Schenk's favor. Along the way, however, the court entered summary judgment against Casebolt on three other counterclaims he had asserted against Schenk.

¶41        On this record, it is unclear whether Schenk or Casebolt (or neither) was the successful or prevailing party for an award of fees and costs. The superior court, however, did not consider and decide that issue at any point revealed by the record. Accordingly, and given that court's discretion in making a prevailing party determination in a case like this, this court vacates the awards of fees and costs and remands the issue to the superior court. That court can and should consider, first, which party (if any) is the successful or prevailing party and, depending upon the outcome of that determination, make appropriate awards of fees and costs.[9]

¶42        As for the netting out of damages, Casebolt argues on cross-appeal that payments by Germaine to Schenk under the PPA should be credited against the 2014 damages award and that any judgment should state the net amount owed. If such payments were made, as suggested at trial, they should be credited. The record on appeal, however, does not show conclusively (1) whether such payments were made, (2) the amount of any such payments, or (3) when they were made. Accordingly, on remand, the superior court should consider those issues if presented with such information and should take into account the amounts and dates of any such payments in calculating accrued interest on the Schenk award. Finally, the judgment on remand should state a net amount owed after offsets and credits (whatever that amount may be).

¶43        Both parties seek an award of attorneys' fees and costs on appeal pursuant to A.R.S. §§ 12-341 and -341.01; Casebolt also seeks fees under the PPA. The requests for fees and costs on appeal are denied without prejudice to the superior court addressing the requests on remand. *See Watson Constr. Co. v. Amfac Mortg. Corp.*, 124 Ariz. 570, 584–85 (App. 1979) (affirming award of no costs to either where there was "the difficulty . . .

---

[9] Given that the fee awards are vacated and remanded for further consideration, this court need not (and expressly does not) address Casebolt's argument on cross-appeal that he should have been awarded additional fees.

[in] ascertaining who was the 'successful party' in the multiple count complaint and multiple count counterclaim litigation").

## CONCLUSION

**¶44** The judgment is affirmed in part and vacated and remanded in part for further proceedings as set forth above



AMY M. WOOD • Clerk of the Court
FILED:  AA